FILED

2010 May-14  PM 02:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

EXHIBIT A


REPORT:  DISTRIBUTION OF

THE SEC HEALTHSOUTH SECURITIES SETTLEMENT

# REPORT:  DISTRIBUTION OF THE SEC HEALTHSOUTH SECURITIES SETTLEMENT

A. <u>Introduction</u>

This Report provides a summary of the processes implemented to identify "Injured Customers" and the protocols for the calculation of distribution amounts, the distribution of payments and the verification of claims in accordance with the Plan of Allocation. The report includes summaries of statistics related to the implementation of these protocols and an affidavit (see Exhibit 1) prepared by Daniel Marotto of Rust Consulting, Inc., the claims administrator for the SEC HealthSouth Securities Settlement, retained by the Fund Administrator.  In accordance with the Plan of Allocation for the SEC HealthSouth Securities Settlement (Plan of Allocation), a separate list of valid claims to be paid will be provided for approval by the Court.

B. <u>Identification of "Injured Customers"</u>

The Plan of Allocation provides that "Injured Customers" are:

> "those shareholder and bondholders who purchased, or otherwise acquired, HealthSouth securities on or after August 14, 1996, and held these securities on one or more of the Disclosure Dates."[1]

A clarification, Notice of Clarification of Plan of Allocation for Funds in SEC Action and Plan of Allocation ("Clarification"), filed by the SEC with the Court on July 24, 2009 further provides that:

> "The Disclosure Dates were "September 30, 1998, August 27, 2002 and/or March 19, 2003."[2]  In accordance with these provisions, in order to receive compensation, it is necessary that the eligible securities must have been purchased or otherwise acquired during the period from August 14, 1996 through March 18, 2003 and must also have been held or sold on September 30, 1998, August 27, 2002 and/or March 19, 2003."[3]

The Plan of Allocation also provides that:

> "Injured Customers do not include any persons or entities (named as Defendants in any case filed by the Securities and Exchange Commission

---

[1] Plan of Allocation for the HealthSouth Securities Settlement, page 2. Attached hereto as Exhibit 2.
[2] Id.
[3] Notice of Clarification of Plan of Allocation for Funds in SEC Action and Plan of Allocation, page 2. Attached hereto as Exhibit 2..

or the United States Attorney general against current or former officers, directors, or employees of HealthSouth Corporation; (2) sued as Defendants in the consolidated class actions in U.S. District Court, Northern District of Alabama, titled *In re HealthSouth Corporation Securities Litigation*, Case No. CV-03-BE-1500-S; (3) members of the immediate family of any such Defendant; (4) the directors, officers, subsidiaries and affiliates of HealthSouth; and (5) any person or entity in which the Defendant has a controlling interest, as their legal representatives, affiliates, heirs, successors or assigns."[4]

The process to identify "Injured Customers" consisted of multiple approaches for notifying potential claimants including: (a) obtaining shareholder information from the Defendant and transfer agent(s) which contained record holders' and beneficial owners' names, and addresses; (b) obtaining names, addresses and transaction data, when available, from broker/dealers for the August 14, 1996 through June 22, 2005 time period; and (c) summary public notice.  A combined claim form for the SEC settlement and the consolidated class actions settlement was sent to each potentially "Injured Customer" identified through Defendant, transfer agent and broker/dealer records, and to any person or entity who requested a claim form.

In accordance with the Plan of Allocation and a Joint Order of the Courts overseeing the settlements, 56 broker/dealers were requested to submit transaction data in electronic form for customers with HealthSouth securities transactions during the recovery period. Twenty-one broker/dealers provided transaction data.  Broker/dealers who could not provide transaction data explained that time constraints, lack of access to archived account data or changes that had been made in their information systems made it impossible to provide the requested data.  Transaction data provided from broker/dealers was used to pre-populate claim forms for 272,460 potential claimants. A copy of a pre-populated claim form is shown in Exhibit 3.

Between November 1, 2007, and March 25, 2008, the Claims Administrator, Rust Consulting, mailed a total of 662,815 Notice Packages. A total of 272,460, 41%, of the claim forms mailed, contained pre-populated transaction data obtained from broker/dealers.  A copy of the complete Notice Package is attached hereto as Exhibit 4. In many cases transaction data were not available in time for the initial notice mailing.  In this scenario, the Claims Administrator mailed the Notice Package with a blank claim form and followed up with a pre-populated claim form at a later date if transaction data became available.  There were 150,075 individuals who received both a Notice Package with a blank claim form and a pre-populated claim form.

---

[4] Plan of Allocation for the HealthSouth Securities Settlement, page 2-3. Attached hereto as Exhibit 2.

Instructions and a file format for electronic filing of claims were provided to custodians upon request along with a copy of the Notice Package.

A website was set up by the Claims Administrator to provide information about the settlement and eligibility for benefits; copies of the plans of allocation for the SEC settlement and the consolidated class actions; and answers to frequently asked questions. There were over 644,634 visits to the settlement fund website recorded between November 1, 2007, and March 19, 2010.

A toll-free helpline was also available that received a total of 34,867 calls between November 1, 2007 and March 19, 2010. The helpline recorded message provided callers with basic information about the settlement. Phone Center representatives spoke live with 30,447, 87%, of the callers to the helpline to answer specific questions.

Undeliverable Notice Packages were processed as they were received as follows: 6,017 Notice Packages returned as undeliverable with a forwarding address were re-mailed to the forwarding address; 71,032 Notice Packages returned as undeliverable without a forwarding address were sent to Accurint, a professional search service, for address tracing; and after address trace results were received, 44,586, 63% of the 71,032 traced addresses, were re-mailed to new addresses.

## C.  Calculation of "Injured Customers'" Distribution Amounts

According to the Plan of Allocation, "Injured Customers" are:

> "eligible for compensation up to a maximum of their actual losses. An Injured Customer's Distribution Amount is based on the relative changes in the prices of the securities following the Disclosure Dates."[5]

The methodology for calculating losses is described in Appendix 1 and 2 of the Plan of Allocation, attached hereto as Exhibit 2.

The total number of claims received by the Claims Administrator was 141,483. 40,499, 29%, were filed electronically and 100,984, 71% were filed on paper. Among the paper claims filed, 72,653, 72%, were claim forms containing pre-populated transaction data.

Using claim forms mailed as a denominator, the filing rate was 27% of the pre-populated claim forms mailed and 7% of the blank claim forms mailed.

---

[5] Id. at page 3.

The claim processing protocols provided that duplicate claims would be removed, to the extent possible, and that claims with deficiencies would be identified.  A total of 5,003 duplicate claims were identified and a total of 21,569 deficiency letters were mailed to claimants.  Responses to deficiency letters were received for 11,442 claims, 53% of the deficiency letters mailed.

The Claims Administrator determined that 70,934 claims were eligible claims.

The Claims Administrator determined that70,549 claims were ineligible claims.  The Claims Administrator mailed a letter to all ineligible claims explaining the reason for ineligibility.  These letters included information on how to obtain a further review of the determination.  Section E summarizes the claim review and verification process.

An external review was performed by an independent accountant, Eisner LLC, to assess the accuracy of agreed upon procedures in claims processing performed by the Claims Administrator.  The review was conducted in accordance with attestation standards established by the American Institute of Certified Public Accountants.  The analysis was conducted at the transaction level. The review found the probability of a transaction error was only 0.0509%. The review projected that there would not be more than 1,082 transactions errors among the 1,226,190 transactions in the claims database.

A parallel calculation of losses was performed by an independent economic consulting firm, Compass Lexecon (see Exhibit 5).  Compass Lexecon independently developed and programmed an algorithm to calculate the loss amounts as defined in the Plan of Allocation for each claimant for their stock, bond, and option transactions. The Compass Lexecon team then applied the algorithm to the Claims Administrator's database of claims. Compass Lexecon concluded that the loss amount calculations in the Claims Administrator's database were at least 99 percent accurate.

The total eligible losses were determined by the Claims Administrator to be $4,350,919,053.91.  This amount exceeds the available funds to compensate "Injured Customers".  The Plan of Allocation provides that:

> "If the funds are insufficient to compensate the Injured Customers
> for their maximum eligible losses, a common proportional discount
> factor will be applied to the baseline compensation to ensure that
> there are sufficient fund available to pay Injured Customers."[6]

---

[6] Id at page 4.

Therefore, in accordance with the Plan of Allocation, a common proportional discount factor of 2.4264% for stocks and bonds and 19.0889% for options was applied to the compensation to ensure that "Injured Customers" receive their proportionate share of the settlement fund.

The Plan of Allocation specifies a *de minimis* payment of $10.00 and further specifies that multiple claims per "Injured Customer" may be aggregated to the extent possible for the purpose of meeting the *de minimis*.  After calculation of payment amounts using the pro rata formula provided for in the Plan of Allocation, the Claims administrator aggregated 7,976 claims with payments below $10.00 with additional claims for the same "Injured Customer" to meet the *de minimis*. The Claims Administrator, in parallel with Compass Lexecon, determined that 3,239 claims were eliminated from payment eligibility because they were below the $10.00 *de minimis*.

The SEC claims and the consolidated class actions claims were processed together to the extent feasible.

D.  Proposed Distribution

Demasco, Sena and Jahelka LLP, Certified Public Accountants, provided CRIS account statements and tax liability to the Claims Administrator for determination of available funds paid into and available for distribution, including interest accrued are $106,448,046.69.  A summary fund accounting report, through March 31, 2010, is attached hereto as Exhibit 6.

Upon approval by the Court, the database of claims eligible for payment, will be forwarded to the Huntington National Bank print vendor for payment distribution.

The distribution will be funded from a settlement account at Huntington National Bank. The Huntington National Bank account is in full compliance with SEC escrow and insurance standards.  Monies will be transferred from the Court Registry Investment System (CRIS) to the Huntington National Bank account upon issuance of a court order authorizing transfer of funds.

A total of 67,695 payments, representing $106,443,000.04 in distributions will be issued. The distribution list has been systematically searched for duplicate payment amounts, names, and tax ids and matches were checked to verify that they are additional, not duplicate claims.  Follow-up included placing phone calls to filing parties to confirm and validate the beneficial owner when large and/or complex claims were identified.

A distribution payment will be mailed by first-class mail or Federal Express to each of the approved "Injured Customers". Upon request, funds may be wire transferred to the accounts of electronic filers.

Undeliverable checks will be processed as follows:  checks returned as undeliverable with a forwarding address will be re-mailed to the forwarding address; checks returned as undeliverable without a forwarding address will be sent to Accurint, a professional search service, for address tracing; and after address trace results are checked will be re-mailed to "Injured Customers" for whom a new address was obtained.

In cases where the "Injured Customer's" name has changed and the "Injured Customer" or their lawful representative requests the re-issuance of a distribution payment, supporting documentation must be provided to the Claims Administrator to support the requested change. The data and documentation submitted will be reviewed to determine the authenticity and propriety of the change request. A payment will be re-issued if the change request is found to be acceptable and valid.

Distribution payments will be valid for 90 days from the date on the payment check.


E.   Verification Procedure for "Injured Customers"

As provided by the Plan of Allocation, the Fund Administrator has completed a claim review process for claimants who requested review of the determination that their claim was ineligible.  All claims requesting review were individually reviewed and reconsidered by the Fund Administrator.  Additional documentation, submitted in response to the ineligibility determination letter, was reviewed to determine if the claim could be determined eligible for payment.  When the review verified that a claim remained ineligible a response was provided to the claimant by phone and/or in writing to explain in detail the reason for the ineligibility of the claim.

In addition, as specified in the Plan of Allocation, "Injured Customers" with inquiries regarding the payment they receive will be able to communicate with the Claims Administrator via telephone or email.


F.   Final Report

The Plan of Allocation provides that "a final report will be submitted by the Fund Administrator to the Court with a copy to the Commission".[7]   The final report will provide a detailed review and analysis of the processes implemented to identify "Injured Customers" and the protocols for the calculation of distribution amounts, the distribution of payments and the verification of claims in accordance with the Plan of Allocation. It will also include a final accounting for the Fair Fun and the Fund Administrator's "recommendations to finalize and close out these matters."[8]

---

[7] Id at page 5.
[8] Id .

EXHIBIT 1

AFFIDAVIT OF DANIEL J. MAROTTO, RUST CONSULTING, INC.

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

SECURITIES AND
EXCHANGE COMMISSION,

            **Plaintiff,**

       v.

          CV-03-J-0615-S

**HealthSouth Corporation**

          **Defendant**

### AFFIDAVIT OF DANIEL J. MAROTTO
### IN SUPPORT OF MOTION FOR
### DISTRIBUTION OF THE SEC HEALTHSOUTH SECURITIES SETTLEMENT

STATE OF CALIFORNIA    )
                    ) ss.:
COUNTY OF MARIN       )

     DANIEL J. MAROTTO, being first duly sworn, deposes and says:

     Rust Consulting, Inc. ("Rust") was retained as Claims Administrator for the U.S. Securities and Exchange Commission ("SEC") HealthSouth Securities Settlement by the Fund Administrator.

     I am an Executive Vice President for Rust. The Fund Administrator retained Rust to act as the Claims Administrator herein to mail copies of the Notice regarding Plans of Allocation of

Settlement Proceeds, and Distribution of Fair Funds by the U.S. Securities and Exchange Commission ("Notice") and Proof of Claim form to all potential claimants who could be identified, to cause the publication of a summary notice, to process all claims submitted by claimants in this action, and to distribute the Fair Fund from the SEC HealthSouth settlement.

PROCEDURES FOLLOWED IN ACCEPTING AND REJECTING CLAIMS

As stated in the Notice Regarding Plans of Allocation of Settlement Proceeds and Applications for Attorneys' Fees and Expenses and Distribution of Fair Fund by the U.S. Securities and Exchange Commission, claimants were required to submit a Proof of Claim form in order to obtain a share of the Fair Fund.

The procedure followed by my firm in processing the claims was to receive all correspondence and claims submitted in this matter from Post Office Box 1906, 201 South Lyndale Ave., Suite S-3, Fairbault, MN 55021-7161. Envelopes received from the Post Office Box were opened and sorted into correspondence (such as requests for claim forms), and actual Proof of Claim forms. The correspondence received was reviewed and responses provided. The claim forms were opened, and assigned claim numbers. The information from each claim form, including the name, address, Employer I.D. or social security number of the claimant, and the purchase and sales transactions listed on the claim were then entered into a computerized data base. The documentation provided in support of each claim by the claimant was reviewed to ascertain whether the claimant had in fact purchased or otherwise acquired HealthSouth Corporation ("HealthSouth") securities (common stock, bonds and/or options) during the relevant time periods. The Plan of Allocation for the SEC HealthSouth Securities Settlement provides that "Injured Customers" are:

"those shareholder and bondholders who purchased, or otherwise

> acquired, HealthSouth securities on or after August 14, 1996, and
> held these securities on one or more of the Disclosure Dates."

A clarification, Notice of Clarification of Plan of Allocation for Funds in SEC Action and Plan

of Allocation ("Clarification"), filed by the SEC with the Court on July 24, 2009 further provides

that:

> "The Disclosure Dates were "September 30, 1998, August 27, 2002 and/or
> March 19, 2003." In accordance with these provisions, in order to receive
> compensation, it is necessary that the eligible securities must have been
> purchased or otherwise acquired during the period from August 14, 1996
> through March 18, 2003 and must also have been held or sold on September 30,
> 1998, August 27, 2002 and/or March 19, 2003."

Claims were then reviewed to be sure they were not submitted by or on behalf of

excluded persons; i.e., Defendants HealthSouth and founder and former Chief Executive Officer

Richard M. Scrushy; "Individual Settling Defendants" Anthony J. Tanner, James P. Bennett,

Robert E. Thomson, Thomas W. Carman, P. Daryl Brown, Patrick A. Foster, Brandon O. Hale,

Larry D. Taylor, Susan M. Jones, William W. Horton, Larry R. House, Richard F. Celeste, C.

Sage Givens, George H. Strong, Larry D. Striplin, Jr., Joel C. Gordon, John S. Chamberlin,

Charles W. Newhall, III, Edwin M. Crawford, Jan L. Jones, Russell Maddox, Phillip C. Watkins;

members of his/their immediate families; any entity in which any defendant has a controlling

interest; any person who was an officer or director of HealthSouth during the Class Period; and

the legal representatives, heirs, successors or assigns of any of the foregoing excluded persons or

entities to the extent that the identities of such persons or entities are known to us through the list

of defendants and through the claimant's certification on the Proof of Claim form.  Claims were

also reviewed against the list of persons who requested exclusion.

Where a submitted claim lacked the required information or documentation to substantiate the Claimant's transactions during the recovery period, or was otherwise ineligible (i.e., no signature), a letter was sent to the claimant advising him or her of the deficiency and requesting the submission of the appropriate documentary evidence or correction of the defect.

Each claimant was notified that unless the deficiency was corrected within twenty one (21) days, his or her claim would be accepted only to the extent of the documentation supplied or entirely rejected if the required documentation or transactional information was not supplied.

If a claimant did not respond with the requested documentation or transactional information, a notice of determination was sent. The claimant was advised that if they disagreed with the determination, they could submit a notice and statement of reasons for disagreeing with the determination and request a review by this Court.

Claimant's who submitted claims that were ineligible under the Plan of Allocation were sent a Final Disposition Letter. The Final Disposition Letter, samples of which are attached hereto as Exhibit A, advised the claimant of his, her or its right to request a review of our administrative determination rejecting the claim. Rust initially received 884 letters requesting further review of their claims. The Fund Administrator as well as Counsel for Stockholders and Bondholders reviewed each of these requests and assisted in the resolution of most of the review requests. At this time there are three (3) outstanding requests for review of the determination that their claims are not eligible for payment because their HealthSouth shares were not held on one of the disclosure dates as required under the Plan of Allocation:

> (1) Claim No. 8945 purchased 822 shares of HealthSouth common stock on September 16, 1999, and sold those shares on December 29, 1999. Shares were not held on a disclosure date as required by the Plan of Allocation.

(2) Claim No. 66534   purchased a total of 15,000 shares of HealthSouth common stock on August 24, 26, 27, and 31, 1999, and September 7, 9, and 20, 1999, and sold those shares on September 15, 1999, and September 22, 1999.  Shares were not held on a disclosure date as required by the Plan of Allocation.

(3) Claim No. 98510 purchased four (4) Bonds on June 25, 1998, and sold them on October 29, 1998.  Bonds were not held on a disclosure date as required by the Plan of Allocation.

and an eligibility determination request on behalf of the "Gordon Claimants" to participate in the settlement.

## LATE BUT OTHERWISE VALID CLAIMS

Approximately 3,766 claims were postmarked later than February 28, 2008, the claim submission deadline stated in the Notice Regarding Plans of Allocation of Settlement Proceeds and Applications for Attorneys' Fees and Expenses and Distribution of Fair Fund by the U.S. Securities and Exchange Commission.  All such claims were accepted subject to such other deficiencies as were determined to exist.  We believe that no delay in the processing or distribution of the Fair Fund resulted from the provisional acceptance of these claims due to the time required to process the large volume of timely submitted claims.  Accordingly, we respectfully request the Court approve our determination and the determination of the Fund Administrator to accept these claims. These claims are included in the Payment Distribution List submitted to the Court for approval.

## ACCEPTED AND REJECTED CLAIMS

A total of 141,483 claims were submitted of which a total of 70,934 have been accepted for payment representing a total of eligible losses of $4,350,919,053.91.  A total of 3,239 accepted claims did not qualify for payment as the claim did not achieve a value of $10.00.

Page 5

A total of 70,549 claimants were rejected for the following reasons:

| No. of Claims | Code | Reason for Rejection |
|---|---|---|
| 4,850 | DUP | Duplicate Claim |
| 5 | FRAU | Questionable Claim Form |
| 155 | NTEL | Claim is not for an eligible security |
| 53,365 | NOL | Claim Calculated to No Loss |
| 7,570 | OUT | No Purchase During Recovery Period |
| 69 | XDEF | Excluded Party |
| 2,765 | INSF | Insufficient Claim Not Cured |
| 2 | XSEC | Requested Exclusion from the SEC portion |
| 1,768 | WDR | Withdrawn |

Exhibit B to the Motion for Approval of Payment of Claims in Accordance with Plan of Allocation and Transfer of Funds contains a list of valid claims eligible for payment in accordance with the Plan of Allocation for the SEC HealthSouth Securities Settlement.

Rust has spent the time necessary to do a thorough job of processing the claims and to protect the interests of each Claimant submitting a claim.  No claims were rejected out-of-hand and adequate time was spent communicating with Claimants and suggesting appropriate ways they could document their claims and participate in the settlement.  Telephone calls and written letters from claimants to Rust were courteously handled.  Claimants were assisted to the fullest extent possible. The professional attitude and work product of Rust was, I believe, of the highest quality.

It is respectfully requested that the Court enter an Order granting the Motion for Approval of Claims in Accordance with Plan of Allocation and Transfer of Funds.

## RECORDS RETENTION AND DESTRUCTION

We request that the Court enter an Order providing that one year after the final distribution of the Fair Fund we are authorized to destroy the paper copies of the Proof of Claim forms, and three years after distribution of the Fair Fund we are authorized to destroy electronic copies of claim records.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court enter an Order (1) approving Rusts' administrative determinations accepting and rejecting claims as herein set forth; (2) authorizing distribution of the Fair Fund to the accepted claimants; and (3) authorizing destruction of paper copies of Proof of Claim forms and electronic copies of claim records after an appropriate time following the distribution of the Fair Fund.

Daniel J. Marotto

Sworn to before me this 11th
day of May 2010

Notary Public

J.R. BEGG
COMM. #1870247
Notary Public - California
Marin County
My Comm. Expires Nov. 28, 2013

EXHIBIT A

HealthSouth Securities Settlement
c/o Rust Consulting, Inc.
201 South Lyndale Ave, Suite S-3
PO Box 1906
Faribault, MN  55021

*Determination Letter - No Loss for SEC*

<<Mail Date>>

**«Name»**
**«Address»**
**«Address 2»**
**«City» «State» «ZipCode»**

Reference: Claim No. **«clm_no»**

Dear Madam or Sir:

Thank you for filing your claim in the HealthSouth Securities Settlement.

All claims filed in the SEC settlement have now been processed in accordance with the terms of the Plan of Allocation approved by the United States Securities and Exchange Commission and the judge overseeing the case in the United States District Court for the Northern District of Alabama. The Plan of Allocation and other case documents are available on our Internet site, www.hlssettlement.com.

The SEC settlement provides that only claims with losses on HealthSouth securities are eligible for payment from the SEC Settlement Fund. All claims were calculated according to the terms of the Plan of Allocation. It was determined that your claim is ineligible for payment from the SEC Settlement because your claim calculation did not result in a loss according to the provisions of the Plan.

Please note that this determination pertains only to the SEC Settlement. If your claim in the consolidated class actions is found to be ineligible, you will be notified separately.

The SEC Settlement provides for a review of the determination with respect to your claim. If you believe there was an error in determining your claim's eligibility, please submit your written request for review, including any documentation to support your request in accordance with the enclosed instructions, to the Claims Administrator at the address above. Submissions for review must be postmarked no later than <<mail date + 20 days>>.   Requests for review postmarked after this deadline will not be considered.

Very truly yours,

HealthSouth Securities Settlement
Claims Administrator

**Instructions Regarding Request for Review of Claims Administrator's Determination**

In order for your request for review of the Claims Administrator's determination of your claim to be processed, you must follow these instructions:

- You will have **20** days from the date on the enclosed letter to submit a detailed statement of the basis of your challenge of the Claims Administrator's determination.

- Any supporting documentation must be marked with the Claim Number that appears on the enclosed letter.

- Your request for review may be submitted by letter to the Claims Administrator at the address above. The Claims Administrator will forward your request for review to the Court overseeing the SEC Settlement.

- Your request for review must also include claim number and claimant identification; claimant representative or agent information, if applicable; and a certification that the information provided in the request for review is true and correct.

- All requests for review must be mailed to the address above or **faxed to 1-866-591-7219.**

HealthSouth Securities Settlement
c/o Rust Consulting, Inc.
201 South Lyndale Ave, Suite S-3
PO Box 1906
Faribault, MN 55021

*Determination Letter - No Loss for SEC and Class*

<<Mail Date>>

**«Name»**
**«Address»**
**«Address 2»**
**«City» «State» «ZipCode»**

Reference:  Claim No.  **«clm_no»**

Dear Madam or Sir:

Thank you for filing your claim in the HealthSouth Securities Settlement.

All claims filed in the SEC and the consolidated class action settlements have now been processed in accordance with the terms of the Plans of Allocation approved by the United States Securities and Exchange Commission and the judges overseeing the cases in the United States District Court for the Northern District of Alabama. The Plans of Allocation and other case documents are available on our Internet site, www.hlssettlement.com.

Both the SEC and the consolidated class action cases provide that only claims with losses on HealthSouth securities are eligible for payment from the HealthSouth Securities Settlement.  All claims were calculated according to the terms of the Plans of Allocation.  It was determined that your claim is ineligible for payment from the HealthSouth Securities Settlement because your claim calculation did not result in a loss according to the provisions of the Plans.

Both the SEC case and the consolidated class actions provide for a review of the determination with respect to your claim.  If you believe there was an error in determining your claim's eligibility, please submit your written request for review, including any documentation to support your request, to the Claims Administrator at the address above.  Submissions for review must be postmarked no later than <<mail date + 20 days>>.  Requests for review postmarked after this deadline will not be considered.


Very Truly Yours,



HealthSouth Securities Settlement
Claims Administrator

**Instructions Regarding Request for Review of Claims Administrator's Determination**

In order for your request for review of the Claims Administrator's determination of your claim to be processed, you must follow these instructions:

- You will have **20** days from the date on the enclosed letter to submit a detailed statement of the basis of your challenge of the Claims Administrator's determination.

- Any supporting documentation must be marked with the Claim Number that appears on the enclosed letter.

- Your request for review may be submitted by letter to the Claims Administrator at the address above. The Claims Administrator will forward your request for review to the Court overseeing the SEC case and the Court overseeing the consolidated class actions.

- Your request for review must also include claim number and claimant identification; claimant representative or agent information, if applicable; and a certification that the information provided in the request for review is true and correct.

- All requests for review must be mailed to the address above or **faxed to 1-866-591-7219.**

EXHIBIT 2

NOTICE OF CLARIFICATION OF PLAN OF ALLOCATION FOR FUNDS IN
SEC ACTION AND PLAN OF ALLOCATION

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

                          Plaintiff,

         v.                                    CV-03-J-0615-S

HealthSouth Corporation

                          Defendant.

## NOTICE OF CLARIFICATION OF PLAN OF ALLOCATION FOR FUNDS IN SEC ACTION AND PLAN OF ALLOCATION

Francis E. McGovern, the Court-appointed Distribution Agent for the Securities and

Exchange Commission v. HealthSouth Qualified Settlement Fund ("Fund"), hereby submits a

clarification with regard to the Distribution Agent's Plan of Allocation, as currently described,

along with an incorporation of all clarifications into the Plan of Allocation.

The Plan of Allocation for the Securities and Exchange Commission HealthSouth

Securities Settlement was filed on October 22, 2007, in accordance with the Joint Order

Approving Form and Manner of Notice dated October 3, 2007 (see "Declaration of Joy Ann Bull

Providing The Final Notice Documents," Exhibit 4, Appendix II).  A Notice of Clarification of

Plan of Allocation for Funds in SEC Action was filed on February 5, 2008.  A Notice of Clarification of Plan of Allocation for Funds in SEC Action was filed on July 24, 2009. Attached hereto is the Plan of Allocation incorporating all clarifications including those herein.

The Plan of Allocation specifies that "[i]f the funds are insufficient to compensate the Injured Customers for their maximum eligible losses, a common proportional discount factor will be applied to the baseline compensation to ensure that there are sufficient funds available to pay Injured Customers."[1] The Plan further specifies that "[a]n Injured Customer's eligibility for compensation is capped by the Injured Customer's actual loss on a security."[2]  The common proportional discount factor shall be applied to the baseline compensation after it is capped by actual losses.

The Plan of Allocation specifies a 180 day negotiation period for checks.[3]  The Order Appointing a Distribution Agent and Establishing a Disgorgement Fund, issued April 12, 2006 specifies that "checks shall be valid for a period of ninety days from the date of issuance."[4] The period of time to negotiate checks shall be ninety (90) days.

The Plan of Allocation language specifies that "funds will remain in the escrow account until such time as the Commission determines the appropriate use of such funds."[5]  At the discretion of the Distribution Agent, in the event that there are sufficient funds remaining after the first distribution to warrant a second distribution, a second distribution can be made with the minimum payment amount to be determined by the Distribution Agent based on available monies and the number of eligible claimants.  In the event of a second distribution, payments will be made only to claimants who cashed their checks in the first distribution.

---

[1]  Plan of Allocation for the SEC HealthSouth Securities Settlement, page 4.
[2]  Plan of Allocation for the SEC HealthSouth Securities Settlement, page 3.
[3]  Plan of Allocation for the SEC HealthSouth Securities Settlement, page 5.
[4]  Order Appointing A Distribution Agent And Establishing A Disgorgement Fund, page 4.
[5]  Plan of Allocation for the SEC HealthSouth Securities Settlement, page 5.

The Order Appointing A Distribution Agent And Establishing A Disgorgement fund provides:

> The Distribution Agent shall coordinate his efforts with other settlement funds related to the cause of action underlying this case.[6]

> The Distribution Agent shall propose a single plan of allocation, to avoid duplicative costs and/or confusion to the victims.[7]

Pursuant to this Order, the Distribution Agent will coordinate the distribution process by ensuring that the distribution process adopts consistent procedures with In re HealthSouth Corporation Securities Litigation, Master File no. CV-03-BE-1500-S, including, but not limited to, the issuing of checks, correspondence, and other distribution related matters.  In this connection and with agreement of the Securities and Exchange Commission, the Distribution Agent will submit each distribution list to the Court for approval with a copy to the Commission and submit a report to the Court for approval with a copy to the Commission.

The Distribution Agent respectfully requests that the Court incorporate this clarification into the Plan of Allocation as provided in the attached Plan of Allocation.

Dated:  May 14, 2010

Respectfully submitted,


_____

Francis E. McGovern
Distribution Agent
401 West Alabama
Houston, TX 77006
Tel: 1-919-613-7095
E-mail: McGovern@ law.duke.edu

---

[6] Order Appointing A Distribution Agent And Establishing A Disgorgement Fund, page 2.
[7] Order Appointing A Distribution Agent And Establishing A Disgorgement Fund, page 3.

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2010, I electronically filed the foregoing Clarification by using the ECF system which will send a notice of electronic filing to the following known Filing Users: R. Martin Adams, Edward E. Angwin, Gary H. Baise, William P. Hicks, Arthur W. Leach, Alan M. Lieberman, Madison Loomis, Joseph B. Mays, Jr., Francis E. McGovern, Leslie V. Moore, James W. Parkman, J. Marbury Ranier, Alex Rue, David G. Russel, Jack W. Seldon, H. Michael Semler, Kile T. Turner, John D. Worland, Jr.

I further certify that I served the foregoing document and notice of electronic filing by first-class mail to the following non-ECF participants:

Charles F. Walker, Esq.
Skadden, Arps, slate, Meagher & Flom
1440 New York Ave., N.W.
Washington D.C. 20005-2111

G. Douglas Jones, Esq.
2001 Park Place North, Suite 1000
Birmingham, AL 35203

Robert R. Riley, Jr.
Riley & Jackson, P.C.
1744 Oxmoor Road
Birmingham, AL 35209

Patrick J. Coughlin, Esq.
Coughlin Stoia et al.
655 West Broadway, Suite 1900
San Diego, CA 92101

James W. Johnson, Esq.
Labaton Sucharow LLP
140 Broadway, 34th Floor
New York, NY 10005

John P. Coffey, Esq.
1285 Avenue of the Americas, 38th Floor
New York, NY 10019Robert T. Cunningham, Jr.
Cunningham Bounds Crowder Brown & Breedlove
1601 Dauphin Street
Mobile, AL 36604

David J. Guin Esq.
Donaldson & Guin, LLC
The Financial Center

505 20th Street, North, Suite 1000
Birmingham, AL 35203

Charles W. Gilligan, Esq.
O'Donohue & O'Donohue
4748 Wisconsin Avenue, N.W.
Washington, DC 20016

Michael J. Del Giudice, Esq.
1219 Virginia Street, East, Suite 100
Charleston, WV 25301


/s/_____

**Plan of Allocation for the SEC HealthSouth Securities Settlement**

## INTRODUCTION

This distribution plan ("Plan") concerns the $100 million Fair Fund established pursuant to the U.S. Securities and Exchange Commission's ("Commission") settlement with HealthSouth Corporation ("HealthSouth") regarding allegations about HealthSouth's accounting practices ("SEC Settlement").

In its complaint, the Commission alleged that HealthSouth, acting through some of its employees, had violated federal securities law.  The investigation related to the falsification of HealthSouth's financial statements; false and misleading disclosures in HealthSouth's Commission filings; public statements during the time period 1996 through 2003; and violations of the Foreign Corrupt Practices Act.  The $100 million Fair Fund is to be distributed among investors in HealthSouth who suffered losses as a result of company disclosures on September 30, 1998, August 27, 2002 and/or March 19, 2003 ("Disclosure Dates").

On June 22, 2005, the United States District Court for the Northern District of Alabama ordered that HealthSouth was liable for disgorgement of $100 and a civil penalty in the amount of $100 million.  Pursuant to that order and Section 308(a) of the Sarbanes-Oxley Act of 2002, the Commission established a Fair Fund with respect to the civil penalty described in the SEC Settlement, and pursuant to Rule 1105(a) of the Commission's Rules on Fair Fund and Disgorgement Plans ("Rules").  Francis McGovern was appointed to act as Fund Administrator of the Fair Fund.

Pursuant to the SEC Settlement, the Fund Administrator proposed to draw up a Plan to be approved by the Court. The Plan included provisions disbursing the Fair Fund to reimburse injured customers for their loss.

## DISTRIBUTION PLAN

Based on the data supplied to the Fund Administrator and the requirements of the SEC Settlement, the Plan is divided into three separate phases.  The initial phase of the Plan is to identify the customers who were injured as a result of HealthSouth's violations, as previously determined by the Commission ("Injured Customers").  The second phase is to calculate each Injured Customer's compensation ("Distribution Amount").  The third and final phase is to distribute the Distribution Fund to the Injured Customers.  The Plan for each phase is outlined below.

### Identification of Injured Customers

Injured Customers are those shareholders and bondholders who purchased, or otherwise acquired, HealthSouth securities on or after August 14, 1996 and held these securities on one or more of the Disclosure Dates. Injured Customers do not include any persons or entities (1) named as Defendants in any case filed by the Securities and Exchange Commission or the United States Attorney general against current or former officers directors, or employees of HealthSouth Corporation; (2) sued as Defendants in the consolidated class actions in U.S. District Court,

Northern District of Alabama, titled *In re HealthSouth Corporation Securities Litigation*, Case No. CV-03-BE-1500-S; (3) members of the immediate family of any such Defendant; (4) the directors, officers, subsidiaries and affiliates of HealthSouth; and (5) any person or entity in which any Defendant has a controlling interest, and their legal representatives, affiliates, heirs, successors or assigns.

The identification process will involve multiple approaches including: (a) obtaining shareholder information from the Defendant or transfer agent(s) which contain record holders' and beneficial owners' names, addresses, and share positions on the Disclosure Dates; (b) obtaining names, addresses and transaction data from broker/dealers for the August 14, 1996 through June 22, 2005 time period (the "relevant dates"); and (c) public notice.  A claim form will be sent to each potentially Injured Customer identified through Defendant, transfer agent and broker/dealer records, and to any person or entity who requests a claim form.

All nominees and brokers that hold or held HealthSouth securities purchased on or after August 14, 1996 and held those securities on a Disclosure Date as nominees for beneficial owners, shall promptly provide the Fund Administrator with: (1) the names and addresses of the identified beneficial owners, and for each such beneficial owner; and (2) all transactional data of purchases, acquisition, sales, transfers, exchanges and holdings of HealthSouth securities for the relevant dates.  HealthSouth shall reimburse reasonable administration costs incurred in connection with the provision of such data, pursuant to the terms of the Court's Final Judgment and Order.

<u>Calculation of Injured Customers' Distribution Amounts</u>

Injured Customers are eligible for compensation up to a maximum of their actual losses. An Injured Customer's Distribution Amount is based on the relative changes in the prices of the securities following the Disclosure Dates.[1]  The relative change is determined by adjusting the change in the price of the HealthSouth securities following the Disclosure Dates by accounting for the overall market return.  Such a methodology ensures that the return on HealthSouth securities captures what cannot be explained by the broader market return.[2]  This approach gives the market-adjusted price changes, which constitute the *baseline compensation* per unit of security held.  Appendix 1 provides the *baseline compensation* based on the period the security was held. Appendix 2 describes the methodology used for calculating these figures.

An Injured Customer's eligibility for compensation is capped by the Injured Customer's actual loss on a security.  That is, the maximum eligible loss on a unit held on a Disclosure Date is the difference between the purchase price and the sale price of that unit.[3]  Any stocks held as of the

---

[1] Specifically, compensation depends on the relative change in the security price during the a*djustment period*. The *adjustment period* is the time it takes the security price to return to a period (one day) of "normal" returns following a disclosure, and it is determined using statistical techniques: this period begins on the Disclosure Date and ends on the last consecutive day in which the daily return was statistically different from the market return.  An investor who sold the security during the *adjustment period* is only entitled to compensation up to the relative change in the price of the security between the Disclosure Date and the day of the sale.

[2] The S&P 500 index is used as the benchmark for the HealthSouth stock and the Vanguard Total Bond Index is used as the benchmark for the HealthSouth bonds.

[3] The purchase price and the sale price are determined by matching buys and sells ("round trips") using a FIFO (First In First Out) principle.  Profits on one unit are not netted against losses incurred on other units by the same investor.

close of trading on March 20, 2003 will be treated as liquidated on March 20, 2003.  Similarly, any bonds held as of the close of trading on March 31, 2003 will be treated as liquidated on March 31, 2003.  Actual losses on securities held beyond the order date of June 22, 2005 are calculated using the closing prices of these securities on that date.

No Distribution Amount less than $10.00 will be paid.  The Fund Administrator may aggregate accounts held by any Injured Customer for purposes of meeting the $10.00 floor on distributions.

If the funds are insufficient to compensate the Injured Customers for their maximum eligible losses, a common proportional discount factor will be applied to the baseline compensation to ensure that there are sufficient funds available to pay Injured Customers.

The distribution fund plan allocates $1 million to compensate Injured Customers who suffered losses on derivatives of HealthSouth securities.  These Injured Customers are eligible for compensation up to their actual losses provided they held Call or Put Options on HealthSouth common stock that were purchased between August 14, 1996 and March 18, 2003, and were owned at the end of one of the following dates: September 29, 1998, August 26, 2002 and/or March 18, 2003.  If the total actual losses on derivatives of HealthSouth securities exceed $1 million, a common proportional discount factor will be applied to the Injured Customers' full losses.

<u>Distributions to Injured Customers</u>

To the extent reasonable and feasible, and where consistent with the provisions of this Plan, the notice, claims procedure and distribution of compensation to Injured Customers shall be coordinated with a claims process and distribution in the partial settlement of *In re HealthSouth Corporation Securities Litigation*, Case No. CV-03-BE-1500-S (N.D. Ala.), including, without limitation: obtaining transaction data from brokers and nominees; preparation and distribution of a single claim form; a uniform claimant appeal process; and distribution of a single payment to eligible claimants.

The Fund Administrator is recommending that an initial distribution be made in this matter, followed by distributions on a rolling basis as settlements further occur. Each distribution list will be submitted to the Court for approval, with a copy to the Commission, once a significant number of Injured Customers are identified.

Before a distribution is made to Injured Customers, the Fund Administrator will submit a report to the Court seeking approval with a copy to the Commission. This report will include the name of each Injured Customer along with their Distribution Amount. Upon approval, the database of approved Injured Customers will be submitted to the U.S. Postal Service's National Change of Address vendor to standardize the addresses for postal rate discounts and to update mailing addresses. The updated database of Injured Customers and Distribution Amounts will then be sent to the agent appointed by the Fund Administrator to disburse the Fair Fund for printing and mailing of distribution payments.

Each distribution will be funded from an escrow fund by a transfer of funds into a distribution checking account held by an escrow agent appointed by the Fund Administrator. Under the Internal Revenue Code, the Fund Administrator is required to withhold applicable taxes from

payments of the Distribution Amount, unless the Fund Administrator has received adequate tax documentation from, or on behalf of, the Injured Customer prior to making such payment, and, further, if the Fund Administrator is required to notify the payee of such withholding, if any.

A distribution payment will be sent to each approved Injured Customer with an attached cover letter. Each distribution payment will clearly indicate that checks must be negotiated within 90 days of issuance.

Distribution payments returned to the Fund Administrator as undeliverable will be sorted into two categories and the Injured Customer's data file will be appropriately marked in the Fund Administrator's main database. If the Post Office provides a forwarding address, the Fund Administrator will change the main database and re-mail the distribution payment. If no forwarding address is provided, the name and old address will be sent to a credit bureau for updated addresses. Any updated addresses received will be used to re-mail the distribution payments. Any payments re-mailed will include a cover letter indicating the payee has 90 days from the date of the letter to negotiate the payment.

The Fund Administrator will continue to work to identify Injured Customers. When the Fund Administrator determines that efforts to identify the Injured Customers have been exhausted, a final report will be submitted by the Fund Administrator to the Court with a copy to the Commission listing its recommendations to finalize and close out these matters. The final distribution will occur within 30 days of the last Injured Customer being identified or the Court approving the finalization and closing of these matters. Under Fair Fund under Rule 1101(b)(5), the Fund Administrator proposes the Fair Fund termination after the following have occurred: (1) the Final Accounting by the Fund Administrator has been submitted and approved by the Court, (2) all taxes and fees have been paid, and (3) all remaining funds or any residual have been transferred to the U.S. Treasury.

## Verification Procedure for Injured Customers

By distribution, the Fund Administrator will establish on its website a procedure whereby any person who (a) has not received a Distribution Amount and who wishes to determine whether they have been identified as an Injured Customer, or (b) has received a Distribution Amount but wishes to ascertain whether such Distribution Amount is accurate, may so inquire by submitting electronically or telephonically certain identifying information (such as their last name or, in the case of an entity, the legal name of such entity, and the last four digits of the social security number or tax identification number, and any information that such person believes should be considered in determining the Distribution Amount available to such person). The Fund Administrator will consider the information and then respond electronically or in writing to the person or entity making the inquiry informing them, with respect to (a) above, whether or not they are an Injured Customer, and if they are an Injured Customer, providing information as to what procedures the Injured Customer must follow (such as providing the Fund Administrator with their full name, address, and proof of identity) to receive a Distribution Amount, and, with respect to (b) above, whether the Distribution Amount paid was the proper amount, and, if not, then including a distribution payment for the shortfall between the Distribution Amount paid and the re-calculated Distribution Amount.

## Other Matters

In cases where the Injured Customer is unable to endorse the distribution payment as written, and the Injured Customer or their lawful representative requests the re-issuance of a distribution payment, supporting documentation must be provided to the Fund Administrator to support the requested change. The data submitted will be reviewed to determine the authenticity and propriety of the change request. Any properly documented change request that is accepted will result in the payment being re-issued. No payment will be re-issued unless the documentation submitted is accepted as proper.

The Fund Administrator shall file on a timely basis all required federal, state and local tax returns and estimated payments with respect to the Fair Fund. Copies of all filings will be submitted to the Commission's Office of Financial Management and to the Associate Regional Director of the Southeast Regional Office. Tax payments, if any, shall be made in accordance with the provisions of the Court's orders governing such payments.

The Fund Administrator shall file an accounting of the Fair Fund with the Court, with a copy to counsel for the Commission.

HealthSouth shall, pursuant to Section IV of the Final Judgment and Order, pay all reasonable expenses of distribution within thirty days after receipt of an invoice for such services from the Fund Administrator or any agent appointed by the Fund Administrator to conduct the distribution.

**Appendix 1: Baseline Compensation for HealthSouth Securities**[4]

<u>HealthSouth Stock</u>

1. Stocks purchased between 8/14/1996 and 9/29/1998:
   a. $3.68 if sold on or after 9/30/1998 and on or before 8/26/2002
   b. $8.77 if sold on 8/27/2002
   c. $10.31 if sold on 8/28/2002
   d. $9.69 if sold on 8/29/2002
   e. $9.99 if sold on 8/30/2002
   f. $9.69 if sold on or after 9/3/2002 and on or before 3/18/2003
   g. $13.49 if sold on or after 3/20/2003

2. Stocks purchased between 9/30/1998 and 8/26/2002:
   a. $5.09 if sold on 8/27/2002
   b. $6.63 if sold on 8/28/2002
   c. $6.01 if sold on 8/29/2002
   d. $6.31 if sold on 8/30/2002
   e. $6.01 if sold on or after 9/3/2002 and on or before 3/18/2003
   f. $9.81 if sold on or after 3/20/2003

3. Stocks purchased on or after 8/27/2002 and on or before 3/18/2003 and sold on or after 3/20/2003: $3.80.

---

[4] HealthSouth stock was not traded on 3/19/2003.

HealthSouth Bonds

Baseline compensation per bond with a par value of $1,000:

1.  Bonds purchased between 3/20/1998 and 8/26/2002 and sold on or before 3/18/2003:

| Date of Sale | 7% Senior Notes Due 6/15/08 | 7.625% Senior Notes Due 6/1/12 | 10.75% Senior Notes Due 10/1/08 | 8.5% Senior Notes Due 2/1/08 | 7.375% Senior Notes Due 10/1/06 | 8.375% Senior Notes Due 10/1/11 | 6.875% Senior Notes Due 6/15/05 | 3.25% Convertible Debentures Due 4/1/03 |
|---|---|---|---|---|---|---|---|---|
| 8/27/2002 | $117.70 | $122.70 | $95.00 | $132.60 | $112.70 | $137.60 | $114.60 | $15.20 |
| 8/28/2002 | $159.70 | $164.10 | $172.30 | $174.70 | $164.70 | $164.70 | $151.40 | $33.70 |
| 8/29/2002 to 3/18/2003 | $180.70 | $192.70 | $172.30 | $174.70 | $164.70 | $164.70 | $181.00 | $33.70 |

2.  Bonds purchased between 8/27/2002 and 3/18/2003 and sold on or after 3/20/2003:

| Date of Sale | 7% Senior Notes Due 6/15/08 | 7.625% Senior Notes Due 6/1/12 | 10.75% Senior Notes Due 10/1/08 | 8.5% Senior Notes Due 2/1/08 | 7.375% Senior Notes Due 10/1/06 | 8.375% Senior Notes Due 10/1/11 | 6.875% Senior Notes Due 6/15/05 | 3.25% Convertible Debentures Due 4/1/03 |
|---|---|---|---|---|---|---|---|---|
| 3/20/2003 | $379.50 | $377.10 | $619.50 | $431.90 | $401.90 | $392.00 | $416.80 | $606.60 |
| 3/21/2003 | $407.90 | $410.40 | $728.70 | $460.20 | $445.20 | $435.30 | $475.00 | $822.80 |
| 3/24/2003 | $407.90 | $395.00 | $714.30 | $452.30 | $445.20 | $417.30 | $457.10 | $788.50 |
| 3/25/2003 | $407.90 | $377.50 | $704.30 | $432.30 | $445.20 | $402.30 | $427.10 | $783.50 |
| 3/26/2003 | $407.90 | $413.00 | $764.50 | $467.80 | $445.20 | $437.90 | $472.70 | $868.80 |
| 3/27/2003 | $407.90 | $413.00 | $759.60 | $467.80 | $445.20 | $425.90 | $472.70 | $883.90 |
| 3/28/2003 | $407.90 | $413.00 | $734.70 | $467.80 | $445.20 | $398.90 | $472.70 | $859.00 |
| 3/31/2003 or after | $407.90 | $413.00 | $734.70 | $467.80 | $445.20 | $427.80 | $472.70 | $870.10 |

3.   Bonds purchased between 3/20/1998 and 8/26/2002 and sold on or after 3/20/2003:

| Date of Sale | 7% Senior Notes Due 6/15/08 | 7.625% Senior Notes Due 6/1/12 | 10.75% Senior Notes Due 10/1/08 | 8.5% Senior Notes Due 2/1/08 | 7.375% Senior Notes Due 10/1/06 | 8.375% Senior Notes Due 10/1/11 | 6.875% Senior Notes Due 6/15/05 | 3.25% Convertible Debentures Due 4/1/03 |
|---|---|---|---|---|---|---|---|---|
| 3/20/2003 | $560.20 | $569.70 | $791.80 | $606.60 | $566.60 | $556.60 | $597.80 | $640.30 |
| 3/21/2003 | $588.60 | $603.10 | $901.00 | $634.90 | $609.90 | $600.00 | $656.00 | $856.40 |
| 3/24/2003 | $588.60 | $587.60 | $886.60 | $627.00 | $609.90 | $582.00 | $638.10 | $822.20 |
| 3/25/2003 | $588.60 | $570.10 | $876.60 | $607.00 | $609.90 | $567.00 | $608.10 | $817.20 |
| 3/26/2003 | $588.60 | $605.70 | $936.80 | $642.50 | $609.90 | $602.60 | $653.70 | $902.40 |
| 3/27/2003 | $588.60 | $605.70 | $931.90 | $642.50 | $609.90 | $590.60 | $653.70 | $917.60 |
| 3/28/2003 | $588.60 | $605.70 | $907.00 | $642.50 | $609.90 | $563.60 | $653.70 | $892.70 |
| 3/31/2003 or after | $588.60 | $605.70 | $907.00 | $642.50 | $609.90 | $592.50 | $653.70 | $903.80 |

4.   $58.10 will be added to the baseline compensation of 3.25% Convertible Debentures (Due 4/1/03) bonds for any investor who held this bond on 9/30/1998.[5]

---

[5] There is no evidence to suggest that the prices of other bonds were affected by this disclosure.

**Appendix 2: Methodology Used for Calculating Baseline Compensation**

The first step for calculating the *baseline compensation* is to calculate the *daily return* for HealthSouth Stock (ticker: HLSH) and for eight HealthSouth bonds.  In addition, the *daily return* is calculated for two market indices:  the S&P 500 Index (ticker: GSPC) and the Vanguard Total Bond Market Index (ticker: VBMFX).[6] The *daily return* is based on closing prices.

Next, the *abnormal daily return* is calculated for each security. This represents the return that cannot be explained by the broader market return on a given day. The *abnormal daily return* on HealthSouth stock is calculated as the difference between the *daily return* on the stock and the *daily return* on the S&P 500 Index. The *abnormal daily return* on a HealthSouth bond is the difference between the *daily return* on the bond and the *daily return* on the Vanguard Total Bond Index.

The next step is to determine on what days the *abnormal return* was significantly different from zero at a 95% confidence level. For this purpose, the *standardized abnormal daily return* is calculated for each security by dividing the *abnormal daily return* by its *standard deviation*.[7] The *daily p-value* of the two-sided hypothesis test is then obtained by evaluating the cumulative *t*-distribution at the *standardized abnormal daily return* and multiplying by two. An *abnormal daily return* is significantly different from zero at a 95% confidence level if its *daily p-value* is less than 5%.

Next, the *adjustment period* is determined for each security. The *adjustment period* measures the number of days it took the security price to return to a period of "normal" returns after a Disclosure Date. The a*djustment period* begins on the Disclosure Date and ends with the first non-significant *abnormal daily return*. That is, the length of the *adjustment period* is the number of consecutive statistically significant *abnormal daily returns*.[8] The *adjustment period* for the HealthSouth stock was one trading day following the September 30, 1998 disclosure and five trading days after the August 27, 2002 disclosure. The *adjustment period* for HealthSouth bonds was one trading day for 3.25% Convertible Debentures (Due 4/1/03) following the September 30, 1998 disclosure, between two and three trading days, depending on the bond, following the August 27, 2002 disclosure; and between two and eight trading days following the March 18, 2003 disclosure.  The effect of the third disclosure on the stock price will be dealt with differently, as explained below.

Finally, the *abnormal daily return* is multiplied by the previous day's closing price for each security on each day of its *adjustment period*. This gives the *daily market adjusted price change*. The *baseline compensation* for each investor per unit of security is the sum of the *daily market adjusted price changes* for every day between the Disclosure Date and the sell date. If the investor did not sell the security during the *adjustment period*, the relevant *baseline compensation* is the sum of the *daily market adjusted price changes* over the entire *adjustment*

---

[6] The HealthSouth stock price and the market indices are from Yahoo! Finance. The bond prices are from SunGard and Bloomberg.

[7] The standard deviation for the stock is calculated for a control period of one year prior to the damages period (8/14/1995-8/13/1996). The standard deviation for the bonds for each disclosure is calculated for 100 days prior to the disclosure (6/23/1998 to 9/30/1998 for the first disclosure, 4/5/2002 to 8/26/2002 for the second disclosure, and 10/23/2002 to 3/17/2003 for the third disclosure).

[8] Only days on which the securities were traded are considered for evaluating the *adjustment period*.

*period*. An investor who held a security on multiple Disclosure Dates is entitled to the sum of the *baseline compensations* of these events.

This methodology is not used for the HealthSouth stock price following the March 18, 2003 disclosure. The reason being that the stock did not trade for several days following the disclosure and when trading resumed, its price fell to very low levels. This makes any statistical analysis of the stock returns less precise and less relevant.[9]  Instead, the *baseline compensation* is calculated by simply subtracting $0.11 (the stock price on March 26, 2003, which was the first day after the stock resumed trading) from $3.91 (the closing stock price on March 18, 2003, which was the last day before the disclosure).

The tables below describe the data and the calculations used for determining the *adjustment period* and the *baseline compensation* for each security.

**HealthSouth Stock:**

| Date | Price | *Daily Return* | S&P 500 Index | Index *Daily Return* | *Abnormal Daily Return* | Significance of *Abnormal Daily Return* | *Daily Market Adjusted Price Changes* | *Baseline Compensation* |
|---|---|---|---|---|---|---|---|---|
| **September 30, 1998 Disclosure** | | | | | | | | |
| 9/29/1998 | 14.63 | | 1,049.02 | | | | - | - |
| 9/30/1998 | 10.50 | -28.23% | 1,017.01 | -3.05% | -25.18% | 100% | -$3.68 | $3.68 |
| 10/1/1998 | 9.81 | -6.57% | 986.39 | -3.01% | -3.56% | 86.87% | - | $3.68 |
| **August 27, 2002 Disclosure** | | | | | | | | |
| 8/26/2002 | 11.97 | | 947.95 | | | | - | - |
| 8/27/2002 | 6.71 | -43.94% | 934.82 | -1.39% | -42.56% | 100% | -$5.09 | $5.09 |
| 8/28/2002 | 5.05 | -24.74% | 917.87 | -1.81% | -22.93% | 100% | -$1.54 | $6.63 |
| 8/29/2002 | 5.67 | 12.28% | 917.80 | -0.01% | 12.28% | 100% | $0.62 | $6.01 |
| 8/30/2002 | 5.36 | -5.47% | 916.07 | -0.19% | -5.28% | 99.36% | -$0.30 | $6.31 |
| 9/03/2002 | 5.44 | 1.49% | 878.02 | -4.15% | 5.65% | 99.65% | $0.30 | $6.01 |
| 9/04/2002 | 5.53 | 1.65% | 893.40 | 1.75% | -0.10% | 3.29% | - | $6.01 |
| **March 19, 2003 Disclosure** | | | | | | | | |
| 3/18/2003 | 3.91 | | | | | | | - |
| 3/26/2003 | 0.11 | | | | | | | $3.80* |
| *\* Calculated as the difference between the 3/18/2003 price and the 3/26/2006 price.* | | | | | | | | |

---

[9] In fact, applying the same steps would lead to a *baseline compensation* that exceeds the price of the security before the disclosure.

**7% Senior Notes due 6/15/08:**

| Date | Price | *Daily Return* | Total Bond Market Index | Index *Daily Return* | *Abnormal Daily Return* | Significance of *Abnormal Daily Return* | *Daily Market Adjusted Price Changes* | *Baseline Compensation (per par value of $1,000)* |
|---|---|---|---|---|---|---|---|---|
| **August 27, 2002 Disclosure** | | | | | | | | |
| 8/26/2002 | 97.00 | | 8.41 | | | | - | - |
| 8/27/2002 | 85.00 | -12.37% | 8.39 | -0.24% | -12.13% | 100% | -$11.77 | $117.70 |
| 8/28/2002 | 81.00 | -4.71% | 8.41 | 0.24% | -4.94% | 100% | -$4.20 | $159.70 |
| 8/29/2002 | 79.00 | -2.47% | 8.42 | 0.12% | -2.59% | 97.61% | -$2.10 | $180.70 |
| 8/30/2002 | 79.00 | 0.00% | 8.47 | 0.59% | -0.59% | 39.58% | - | $180.70 |
| **March 19, 2003 Disclosure** | | | | | | | | |
| 3/18/2003 | 86.25 | | 8.77 | | | | - | - |
| 3/20/2003 | 48.00 | -44.35% | 8.74 | -0.34% | -44.01% | 100% | -$37.95 | $379.50 |
| 3/21/2003 | 45.00 | -6.25% | 8.71 | -0.34% | -5.91% | 100% | -$2.84 | $407.90 |
| 3/24/2003 | 46.00 | 2.22% | 8.75 | 0.46% | 1.76% | 91.82% | - | $407.90 |

**7.625% Senior Notes due 6/1/12:**

| Date | Price | *Daily Return* | Total Bond Market Index | Index *Daily Return* | *Abnormal Daily Return* | Significance of *Abnormal Daily Return* | *Daily Market Adjusted Price Changes* | *Baseline Compensation (per par value of $1,000)* |
|---|---|---|---|---|---|---|---|---|
| **August 27, 2002 Disclosure** | | | | | | | | |
| 8/26/2002 | 97.44 | | 8.41 | | | | - | - |
| 8/27/2002 | 84.94 | -12.83% | 8.39 | -0.24% | -12.59% | 100% | -$12.27 | $122.70 |
| 8/28/2002 | 81.00 | -4.64% | 8.41 | 0.24% | -4.88% | 99.37% | -$4.14 | $164.10 |
| 8/29/2002 | 78.24 | -3.41% | 8.42 | 0.12% | -3.53% | 95.16% | -$2.86 | $192.70 |
| 8/30/2002 | 80.10 | 2.38% | 8.47 | 0.59% | 1.78% | 68.18% | - | $192.70 |
| **March 19, 2003 Disclosure** | | | | | | | | |
| 3/18/2003 | 86.00 | | 8.77 | | | | - | - |
| 3/20/2003 | 48.00 | -44.19% | 8.74 | -0.34% | -43.84% | 100% | -$37.71 | $377.10 |
| 3/21/2003 | 44.50 | -7.29% | 8.71 | -0.34% | -6.95% | 100% | -$3.34 | $410.40 |
| 3/24/2003 | 46.25 | 3.93% | 8.75 | 0.46% | 3.47% | 99.86% | $1.55 | $395.00 |
| 3/25/2003 | 48.00 | 3.78% | 8.75 | 0.00% | 3.78% | 99.95% | $1.75 | $377.50 |
| 3/26/2003 | 44.50 | -7.29% | 8.76 | 0.11% | -7.41% | 100% | -$3.55 | $413.00 |
| 3/27/2003 | 45.25 | 1.69% | 8.77 | 0.11% | 1.57% | 85.13% | - | $413.00 |

**10.75% Senior Notes due 10/1/08:**

| Date | Price | Daily Return | Total Bond Market Index | Index Daily Return | Abnormal Daily Return | Significance of Abnormal Daily Return | Daily Market Adjusted Price Changes | Baseline Compensation (per par value of $1,000) |
|---|---|---|---|---|---|---|---|---|
| **August 27, 2002 Disclosure** | | | | | | | | |
| 8/26/2002 | 106.75 | | 8.41 | | | | - | - |
| 8/27/2002 | 97.00 | -9.13% | 8.39 | -0.24% | -8.90% | 100% | -$9.50 | $95.00 |
| 8/28/2002 | 89.50 | -7.73% | 8.41 | 0.24% | -7.97% | 100% | -$7.73 | $172.30 |
| 8/29/2002 | 88.50 | -1.12% | 8.42 | 0.12% | -1.24% | 76.67% | - | $172.30 |
| **March 19, 2003 Disclosure** | | | | | | | | |
| 3/18/2003 | 86.25 | | 8.77 | | | | - | - |
| 3/20/2003 | 24.00 | -72.17% | 8.74 | -0.34% | -71.83% | 100% | -$61.95 | $619.50 |
| 3/21/2003 | 13.00 | -45.83% | 8.71 | -0.34% | -45.49% | 100% | -$10.92 | $728.70 |
| 3/24/2003 | 14.50 | 11.54% | 8.75 | 0.46% | 11.08% | 100% | $1.44 | $714.30 |
| 3/25/2003 | 15.50 | 6.90% | 8.75 | 0.00% | 6.90% | 100% | $1.00 | $704.30 |
| 3/26/2003 | 9.50 | -38.71% | 8.76 | 0.11% | -38.82% | 100% | -$6.02 | $764.50 |
| 3/27/2003 | 10.00 | 5.26% | 8.77 | 0.11% | 5.15% | 100% | $0.49 | $759.60 |
| 3/28/2003 | 12.50 | 25.00% | 8.78 | 0.11% | 24.89% | 100% | $2.49 | $734.70 |
| 3/31/2003 | 12.50 | 0.00% | 8.85 | 0.80% | -0.80% | 48.62% | - | $734.70 |

**8.5% Senior Notes due 2/1/08:**

| Date | Price | Daily Return | Total Bond Market Index | Index Daily Return | Abnormal Daily Return | Significance of Abnormal Daily Return | Daily Market Adjusted Price Changes | Baseline Compensation (per par value of $1,000) |
|---|---|---|---|---|---|---|---|---|
| **August 27, 2002 Disclosure** | | | | | | | | |
| 8/26/2002 | 101.50 | | 8.41 | | | | - | - |
| 8/27/2002 | 88.00 | -13.30% | 8.39 | -0.24% | -13.06% | 100% | -$13.26 | $132.60 |
| 8/28/2002 | 84.00 | -4.55% | 8.41 | 0.24% | -4.78% | 100% | -$4.21 | $174.70 |
| 8/29/2002 | 84.00 | 0.00% | 8.42 | 0.12% | -0.12% | 8.23% | - | $174.70 |
| **March 19, 2003 Disclosure** | | | | | | | | |
| 3/18/2003 | 91.50 | | 8.77 | | | | - | - |
| 3/20/2003 | 48.00 | -47.54% | 8.74 | -0.34% | -47.20% | 100% | -$43.19 | $431.90 |
| 3/21/2003 | 45.00 | -6.25% | 8.71 | -0.34% | -5.91% | 100% | -$2.84 | $460.20 |
| 3/24/2003 | 46.00 | 2.22% | 8.75 | 0.46% | 1.76% | 95.22% | $0.79 | $452.30 |
| 3/25/2003 | 48.00 | 4.35% | 8.75 | 0.00% | 4.35% | 100% | $2.00 | $432.30 |
| 3/26/2003 | 44.50 | -7.29% | 8.76 | 0.11% | -7.41% | 100% | -$3.55 | $467.80 |
| 3/27/2003 | 45.25 | 1.69% | 8.77 | 0.11% | 1.57% | 92.22% | - | $467.80 |

**7.375% Senior Notes due 10/1/06:**

| Date | Price | Daily Return | Total Bond Market Index | Index Daily Return | Abnormal Daily Return | Significance of Abnormal Daily Return | Daily Market Adjusted Price Changes | Baseline Compensation (per par value of $1,000) |
|---|---|---|---|---|---|---|---|---|
| **August 27, 2002 Disclosure** | | | | | | | | |
| 8/26/2002 | 98.50 | | 8.41 | | | | - | - |
| 8/27/2002 | 87.00 | -11.68% | 8.39 | -0.24% | -11.44% | 100% | -$11.27 | $112.70 |
| 8/28/2002 | 82.00 | -5.75% | 8.41 | 0.24% | -5.99% | 100% | -$5.21 | $164.70 |
| 8/29/2002 | 82.00 | 0.00% | 8.42 | 0.12% | -0.12% | 10.79% | - | $164.70 |
| **March 19, 2003 Disclosure** | | | | | | | | |
| 3/18/2003 | 90.50 | | 8.77 | | | | - | - |
| 3/20/2003 | 50.00 | -44.75% | 8.74 | -0.34% | -44.41% | 100% | -$40.19 | $401.90 |
| 3/21/2003 | 45.50 | -9.00% | 8.71 | -0.34% | -8.66% | 100% | -$4.33 | $445.20 |
| 3/24/2003 | 46.00 | 1.10% | 8.75 | 0.46% | 0.64% | 50.02% | - | $445.20 |

**8.375% Senior Notes due 10/1/11:**

| Date | Price | Daily Return | Total Bond Market Index | Index Daily Return | Abnormal Daily Return | Significance of Abnormal Daily Return | Daily Market Adjusted Price Changes | Baseline Compensation (per par value of $1,000) |
|---|---|---|---|---|---|---|---|---|
| **August 27, 2002 Disclosure** | | | | | | | | |
| 8/26/2002 | 101.00 | | 8.41 | | | | - | - |
| 8/27/2002 | 87.00 | -13.86% | 8.39 | -0.24% | -13.62% | 100% | -$13.76 | $137.60 |
| 8/28/2002 | 84.50 | -2.87% | 8.41 | 0.24% | -3.11% | 98.16% | -$2.71 | $164.70 |
| 8/29/2002 | 84.00 | -0.59% | 8.42 | 0.12% | -0.71% | 40.96% | - | $164.70 |
| **March 19, 2003 Disclosure** | | | | | | | | |
| 3/18/2003 | 88.50 | | 8.77 | | | | - | - |
| 3/20/2003 | 49.00 | -44.63% | 8.74 | -0.34% | -44.29% | 100% | -$39.20 | $392.00 |
| 3/21/2003 | 44.50 | -9.18% | 8.71 | -0.34% | -8.84% | 100% | -$4.33 | $435.30 |
| 3/24/2003 | 46.50 | 4.49% | 8.75 | 0.46% | 4.04% | 100% | $1.80 | $417.30 |
| 3/25/2003 | 48.00 | 3.23% | 8.75 | 0.00% | 3.23% | 99.89% | $1.50 | $402.30 |
| 3/26/2003 | 44.50 | -7.29% | 8.76 | 0.11% | -7.41% | 100% | -$3.55 | $437.90 |
| 3/27/2003 | 45.75 | 2.81% | 8.77 | 0.11% | 2.69% | 99.37% | $1.20 | $425.90 |
| 3/28/2003 | 48.50 | 6.01% | 8.78 | 0.11% | 5.90% | 100% | $2.70 | $398.90 |
| 3/31/2003 | 46.00 | -5.15% | 8.85 | 0.80% | -5.95% | 100% | -$2.89 | $427.80 |
| 4/1/2003 | 45.50 | -1.09% | 8.85 | 0.00% | -1.09% | 72.90% | - | $427.80 |

**6.875% Notes due 6/15/05:**

| Date | Price | *Daily Return* | Total Bond Market Index | Index *Daily Return* | *Abnormal Daily Return* | Significance of *Abnormal Daily Return* | *Daily Market Adjusted Price Changes* | *Baseline Compensation (per par value of $1,000)* |
|---|---|---|---|---|---|---|---|---|
| **August 27, 2002 Disclosure** | | | | | | | | |
| 8/26/2002 | 98.67 | | 8.41 | | | | - | - |
| 8/27/2002 | 86.98 | -11.85% | 8.39 | -0.24% | -11.61% | 100% | -$11.46 | $114.60 |
| 8/28/2002 | 83.50 | -4.00% | 8.41 | 0.24% | -4.24% | 100% | -$3.69 | $151.40 |
| 8/29/2002 | 80.64 | -3.43% | 8.42 | 0.12% | -3.54% | 100% | -$2.96 | $181.00 |
| 8/30/2002 | 81.00 | 0.45% | 8.47 | 0.59% | -0.15% | 16.11% | - | $181.00 |
| **March 19, 2003 Disclosure** | | | | | | | | |
| 3/18/2003 | 94.00 | | 8.77 | | | | - | - |
| 3/20/2003 | 52.00 | -44.68% | 8.74 | -0.34% | -44.34% | 100% | -$41.68 | $416.80 |
| 3/21/2003 | 46.00 | -11.54% | 8.71 | -0.34% | -11.20% | 100% | -$5.82 | $475.00 |
| 3/24/2003 | 48.00 | 4.35% | 8.75 | 0.46% | 3.89% | 100% | $1.79 | $457.10 |
| 3/25/2003 | 51.00 | 6.25% | 8.75 | 0.00% | 6.25% | 100% | $3.00 | $427.10 |
| 3/26/2003 | 46.50 | -8.82% | 8.76 | 0.11% | -8.94% | 100% | -$4.56 | $472.70 |
| 3/27/2003 | 46.50 | 0.00% | 8.77 | 0.11% | -0.11% | 11.81% | - | $472.70 |

**3.25% Convertible Debentures due 4/01/03:**

| Date | Price | *Daily Return* | Total Bond Market Index | Index *Daily Return* | *Abnormal Daily Return* | Significance of *Abnormal Daily Return* | *Daily Market Adjusted Price Changes* | *Baseline Compensation (per par value of $1,000)* |
|---|---|---|---|---|---|---|---|---|
| **September 30, 1998 Disclosure** | | | | | | | | |
| 9/29/1998 | 82.56 | | 6.63 | | | | - | - |
| 9/30/1998 | 77.50 | -6.13% | 6.69 | 0.90% | -7.04% | 100% | -$5.81 | $58.10 |
| 10/1/1998 | 77.60 | 0.13% | 6.72 | 0.45% | -0.31% | 15.62% | | |
| **August 27, 2002 Disclosure** | | | | | | | | |
| 8/26/2002 | 97.37 | | 8.41 | | | | - | - |
| 8/27/2002 | 95.62 | -1.80% | 8.39 | -0.24% | -1.56% | 99.37% | -$1.52 | $15.20 |
| 8/28/2002 | 94.00 | -1.69% | 8.41 | 0.24% | -1.93% | 99.93% | -$1.85 | $33.70 |
| 8/29/2002 | 93.50 | -0.53% | 8.42 | 0.12% | -0.65% | 74.55% | - | $33.70 |
| **March 19, 2003 Disclosure** | | | | | | | | |
| 3/18/2003 | 99.75 | | 8.77 | | | | - | - |
| 3/20/2003 | 38.75 | -61.15% | 8.74 | -0.34% | -60.81% | 100% | -$60.66 | $606.60 |
| 3/21/2003 | 17.00 | -56.13% | 8.71 | -0.34% | -55.79% | 100% | -$21.62 | $822.80 |
| 3/24/2003 | 20.50 | 20.59% | 8.75 | 0.46% | 20.13% | 100% | $3.42 | $788.50 |
| 3/25/2003 | 21.00 | 2.44% | 8.75 | 0.00% | 2.44% | 100% | $0.50 | $783.50 |
| 3/26/2003 | 12.50 | -40.48% | 8.76 | 0.11% | -40.59% | 100% | -$8.52 | $868.80 |
| 3/27/2003 | 11.00 | -12.00% | 8.77 | 0.11% | -12.11% | 100% | -$1.51 | $883.90 |
| 3/28/2003 | 13.50 | 22.73% | 8.78 | 0.11% | 22.61% | 100% | $2.49 | $859.00 |
| 3/31/2003 | 12.50 | -7.41% | 8.85 | 0.80% | -8.20% | 100% | -$1.11 | $870.10 |
| 4/1/2003 | 12.50 | 0.00% | 8.85 | 0.00% | 0.00% | 0.00% | - | $870.10 |

EXHIBIT 3

PRE-POPULATED CLAIM FORM

☐

RESPONSE DEADLINE
Postmarked By
**FEBRUARY 28, 2008**

# HEALTHSOUTH SETTLEMENT
## CLAIM FORM
### Please print clearly in black ink.



153

If this claim qualifies for a payment, the payment will be made to the name and address printed to the left. If the beneficial owner name and/or address is different than shown, please enter the correct information in the spaces below and attach documentation for any name change.

Beneficial Owner Name(s) (if different)

Street Address

| City | State | Zip Code | Country |

## INSTRUCTIONS:

Your trading history with ██████████ for account number: ██████████, printed on this Claim Form lists your known transactions through ██████████ for account number: ██████████, of qualifying stocks, bonds, and options for HealthSouth securities during the settlement time periods. Please review your trades, and if you have corrections, update your trading history as follows:

(1) Write the correct information in the space directly below the inaccurate information. (For example, if you believe the number of shares (Column C) for the first trade is incorrect, write the correct number of shares in Column C directly below the incorrect number of shares.)

(2) If you had additional purchases or sales during the settlement period that are not listed below, please provide this information. If you need additional space, attach extra sheets in the same format as below.

> Step 1 - ██████████ for account number: ██████████. HealthSouth Common Stock purchases, acquisitions and sales from August 14, 1996 to March 18, 2003 and sales only from March 19, 2003 to June 22, 2005. If no stocks traded or acquired, skip this step.

Number of shares of HealthSouth common stock owned at the close of trading on August 13, 1996:     0
(If incorrect, write in the correct information to the right and if other than zero, must be documented.) _____

Listed below are your known individual purchases, sales or acquisitions by merger of HealthSouth common stock from **August 14, 1996 to June 22, 2005**, as follows: (a) the trade/merger date; (b) the type of transaction; (c) the number of shares traded; and (d) the total transaction amount. If you require additional space, attach extra sheets in the same format as below.

| | (a) Trade/Merger Date (List in chronological order) | (b) Transaction Type Buy, Sell, Merger | (c) Number of Shares | (d) Total Transaction Amount (not necessary for merger) |
|---|---|---|---|---|
| 1 | 01/03/2002 | PURCHASE | 27.0000 | $399.87 |
| 2 | 04/19/2002 | PURCHASE | 17.0000 | $261.80 |
| 3 | 07/30/2002 | PURCHASE | 32.0000 | $302.65 |
| 4 | 08/28/2002 | SALE | 76.0000 | $459.80 |

**\*\*\* Common Stock/Trading Acquisition History table continued on following page. \*\*\***





| | (a)<br>Trade/Merger Date<br>(List in chronological order) | (b)<br>Transaction Type<br>Buy, Sell, Merger | (c)<br>Number<br>of Shares | (d)<br>Total Transaction Amount<br>(not necessary for merger) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Step 1 – Continued for HealthSouth Common Stock Trading/Acquisition History from August 14, 1996 to June 22, 2005.**

**Step 2 – ▮▮▮▮ for account number: ▮▮▮▮▮▮▮▮ HealthSouth Bond Trading History from March 20, 1998 to June 22, 2005. If no bonds traded, skip this step.**

Listed below are your known individual purchases and sales of HealthSouth Bonds[1] traded from **August 14, 1996 to June 22, 2005**, as follows: (a) the trade date; (b) the bond issue code[1]; (c) the type of transaction; (d) the principal amount (face value or par value); and (e) the total amount paid (including commissions, taxes and fees) or the total amount received (net of commissions, taxes and fees). If you require additional space, attach extra sheets in the same format as below.

| | (a)<br>Trade Date<br>(List in chronological order) | (b)<br>Bond Issue Traded[1]<br>(See code list below) | (c)<br>Transaction Type<br>Buy (B) Sell (S) | (d)<br>Principal Amount<br>(Face value or par value) | (e)<br>Total<br>Transaction Amount |
|---|---|---|---|---|---|
| | | *** NO TRADE HISTORY ON FILE. *** | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

---

[1] The HealthSouth Bonds consist of eight debt instruments. Each was first issued pursuant to Rule 144A of the Securities Act of 1933, and was later exchanged for registered debt with the same terms. Those eight debt instruments are as follows:

| Bond Issue Code | Bond Issue Description | 144A Issuance Date | 144A CUSIP Number | Registered CUSIP Number |
|---|---|---|---|---|
| A | 3 1/4% Convert. Sub. Debentures due 4/1/03 | 03/20/1998 | 421924AD3 | 421924AF8 |
| B | 6 7/8% Senior Notes due 6/15/05 | 06/22/1998 | 421924AG6 | 421924AJ0 |
| C | 7% Senior Notes due 6/15/08 | 06/22/1998 | 421924AK7 | 421924AM3 |
| D | 10 3/4% Senior Sub. Notes due 10/1/08 | 09/25/2000 | 421924AN1 | 421924AP6 |
| E | 8 1/2% Senior Notes due 2/1/08 | 02/01/2001 | 421924AQ4 | 421924AR2 |
| F | 8 3/8% Senior Notes due 10/1/11 | 09/28/2001 | 421924AV3 | 421924AX9 |
| G | 7 3/8% Senior Notes due 10/1/06 | 09/28/2001 | 421924AS0 | 421924AU5 |
| H | 7 5/8% Senior Notes due 6/1/12 | 05/22/2002 | 421924AY7 | 421924AZ4 |

**Step 3 -** ▮▮▮▮▮ **for account number:** ▮▮▮▮▮▮▮▮, **HealthSouth Call and Put Option Contract Trading History.  If no option contracts traded, skip this step.**

### BEGINNING HOLDINGS

Listed below are your known individual trades for calls or puts as follows: (a) the number of contracts purchased; (b) the expiration date (month/year); and (c) the exercise price that you held at the close of trading on **August 13, 1996**:

| Type of Contract | (a) Number of Contracts | (b) Expiration Date | (c) Exercise Price |
|---|---|---|---|
| *** NO TRADE HISTORY ON FILE. *** | | | |
| | | | |
| | | | |
| | | | |

### PURCHASES, SALES AND ACQUISITIONS:

Listed below are your know individual trades of HealthSouth call and put options from **August 14, 1996 to June 22, 2005**, as follows: (a) the trade/merger date; (b) the type of transaction by letter code; (c) call or put; (d) the number of contracts; (e) the price per contract; (f) the date of expiration; (g) the exercise price; (h) the transaction amount; (i) an indication if the option was assigned, was exercised or expired; and (j) the date the option was exercised, assigned or closed out.  If you require additional space, attach extra sheets in the same format as below.

| (a) Trade/Merger Date | (b) Transaction Type: Buy (B), Sell (S), Merger (M) | (c) Call (C) Or Put (P) | (d) Number of Contracts | (e) Price Per Contract (not required for merger) | (f) Expiration month/year (not required for merger) | (g) Exercise Price | (h) Transaction Amount (not required for merger) | (i) Assigned, Exercised, Expired OR Closed Out | (j) Exercised, Assigned, OR Closed Out Date |
|---|---|---|---|---|---|---|---|---|---|
| *** NO TRADE HISTORY ON FILE. *** | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

**Step 4 - Please submit supporting documentation for your claim.**

You must submit documentation for any corrections or updates to your trading history printed above.  Acceptable documentation may include: (a) monthly stock brokerage or other investment account statements; (b) trade confirmation slips; (c) a signed letter from your broker on firm letterhead verifying the information you are providing; (d) a Deposit or Escrow Receipt showing your holdings; or (e) other equivalent proof of your transactions.  If you have questions please call 1-888-952-9108.

**Step 5 - Please review the release for the class actions and sign below.**

1.   I hereby acknowledge full and complete satisfaction of, and do hereby fully, finally and forever settle, release, relinquish and discharge, all of the Released Claims against each and all of the Settling Defendants and each and all of their "Related Parties," defined as each of a Settling Defendant's immediate family members, heirs, executors, administrators, successors, assigns, present and former employees, officers, directors, attorneys, legal representatives, and agents of each of them, and any person or entity which is or was related to or affiliated with any Settling Defendant or in which any Settling Defendant has or had a controlling interest and the present and former parents, subsidiaries, divisions, affiliates, predecessors, successors, employees, officers, directors, attorneys, assigns, and agents of each of them.  The Related Parties shall also include the Settling Insurers.  Notwithstanding anything in this paragraph, Related Parties shall not include any Non-Settling Defendant or any Non-Settling Insurer.







2.  "Released Claims" means all claims (including "Unknown Claims" as defined below), and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, whether brought directly or derivatively, that Lead Plaintiffs or any member of the Bondholder Class or Stockholder Class in the Class actions asserted in the Complaint, or could have asserted as a result of purchases, acquisitions, sales, or exercises made during the Bondholder Class Period or the Stockholder Class Period in securities issued by HealthSouth (including, without limitation, all claims arising out of or relating to any disclosures, public filings, registration statements or other statements by HealthSouth or any Defendant in the Litigation), based upon or arising out of any facts, allegations or claims set forth in the Complaint. In addition, with respect to the Settling Insurers and the present and former parents, subsidiaries, divisions, affiliates, predecessors, successors, employees, officers, directors, attorneys, assigns, and agents of each of them, Released Claims means all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, whether brought directly or derivatively, that are based upon, in consequence of, arise out of or relate in any way, whether in whole or in part, to (i) the Insurance Policies, (ii) the Coverage Litigation, (iii) the class actions, (iv) the litigation, defense, and settlement of the Coverage Litigation and the class actions, and/or (v) any of the facts, circumstances, and situations underlying or alleged in the Coverage Litigation and the class actions.

3.  "Unknown Claims" means all claims, demands, rights, liabilities, and causes of action of every nature and description which the Lead Plaintiffs or any Class Member do not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons which, if known by him, her or it might have affected his, her or its settlement with and release of the Released Persons, or might have affected his, her or its decision not to object to this settlement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Lead Plaintiffs shall have expressly waive, and each of the Class Members shall be deemed to have waived, and by operation of the Judgment shall have waived, the provisions, rights and benefits of California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Lead Plaintiffs shall expressly waive and each of the Class Members shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code §1542. The Lead Plaintiffs and Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims; but the Lead Plaintiffs shall express fully, finally and forever settle and release, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Lead Plaintiffs acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

4.  I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

5.  I (We) hereby warrant and represent to the best of my (our) knowledge that I (we) have included information about all of my (our) transactions in HealthSouth common stock, options, bonds, notes and debentures that occurred during the Class Period as well as the number and type of HealthSouth stock options, held by me (us) at the close of trading on April 23, 1997.

I declare under penalty of perjury under the laws of the United States of America that the foregoing information supplied by the undersigned is true and correct.

_____ / _____ / _____
/Day/Year

_____
ure of Joint Claimant (if any)

_____
or Print Your Name Here)

_____
digits of your SSN or EIN

_____
(Capacity of person(s) signing, e.g. beneficial purchaser(s), executor, administrator, trustee, etc.)

**Please submit your Claim Form and the required documentation POSTMARKED NO LATER THAN FEBRUARY 28, 2008 TO:** HealthSouth Settlement Claims Administrator, c/o Rust Consulting, P.O. Box 1906, Faribault, MN 55021-7161.



EXHIBIT 4

NOTICE PACKAGE

**Francis E. McGovern**
Court Appointed Fund Administrator
HealthSouth Securities Settlement
P.O. Box 1906
201 South Lyndale Ave., Suite S-3
Faribault, MN 55021-7161

November 1, 2007

Dear Madam or Sir:

Your purchases and acquisitions of HealthSouth stocks, bonds and/or options between August 14, 1996 and March 18, 2003 may qualify you for a payment from the HealthSouth Securities Settlement Funds. The Funds were created by the settlement of separate cases brought by the U.S. Securities and Exchange Commission and plaintiffs in class actions in U.S. District Court. The settlements are administered by two U.S. District Court judges.

To submit a claim for payment from both of the HealthSouth Securities Settlement Funds, please follow the simple instructions printed on the enclosed claim form. Simply fill out the form, sign it, include copies of required documents, and return the claim form and documents in the enclosed envelope.

There is a deadline to submit a claim for payment from these funds. The deadline is February 28, 2008.

For further information about the settlements, please read the Notice enclosed with the claim form. There will be a hearing in the U.S. District Court on the fairness of the proposed method for allocating the settlement funds and the applications for attorneys' fees and expenses in the class action cases. Any objections must be filed by December 15, 2007.

If you need assistance to complete the claim form, or if you have any questions about the settlements, we would be happy to help you. Our toll-free number is 1-888-952-9108, or you can send an e-mail to mail@HLSSettlement.com, or, if you are a member of one of the classes, you may contact Lead Counsel in the class actions as identified in question 14 of the Notice. You can also obtain information by visiting our Internet site, www.HLSSettlement.com.

Thank you for your attention to this request.

Very truly yours,

Francis E. McGovern
Court Appointed Fund Administrator

Enclosure

## HEALTHSOUTH SECURITIES SETTLEMENT FUNDS
### Questions & Answers

### What are the HealthSouth Securities Settlement Funds?

The HealthSouth Securities Settlement Funds were created by the settlement of a case brought by the U.S. Securities and Exchange Commission and the partial settlement of private class action cases. The Funds are administered by two U.S. District Court judges.

### Who is eligible for payment from the Funds?

Investors are eligible for payment based on losses from purchase or other acquisition of HealthSouth stocks, bonds and/or options during specified time periods. Qualifying time periods of purchase or acquisition are listed below.

For more information about eligibility, you can call toll free 1-888-952-9108, send an email to mail@HLSSettlement.com, or visit our Internet site www.HLSSettlement.com. Members of the Stockholder Class and the Bondholder Class also may contact Lead Counsel as identified in the Notice.

### How do I apply for payment?

You can apply for payment by completing the enclosed claim form and providing any documentation required. If additional information is needed, you will be contacted by the Claims Administrator.

### What is the deadline for submitting a claim?

The deadline for submitting a claim is February 28, 2008.

### What payments are possible?

Payments are calculated through Court-approved Plans of Allocation. Further information about payment calculation is available in the enclosed Notice, by calling toll free 1-888-952-9108, by sending an email to mail@HLSSettlement.com, or by visiting our website www.HLSSettlement.com and selecting the link called "Plans of Allocation." Members of the Stockholder Class and the Bondholder Class also may contact Lead Counsel as identified in the Notice.

### When will payments be made?

It is anticipated that payments will be sent on approximately June 30, 2008. However, appeals or other circumstances may delay payment in the class action cases.

### Additional questions?

Please call 1-888-952-9108; visit www.HLSSettlement.com; send an email to mail@HLSSettlement.com; or write to HealthSouth Securities Settlement Fund, P.O. Box 1906, Faribault, MN 55021-7161. Members of the Stockholder Class and the Bondholder Class also may contact Lead Counsel as identified in the Notice.

## Qualifying Time Periods of Purchase or Acquisition

You may be entitled to receive money or benefits from the SEC Settlement or the class actions, or both.

You can file a claim and receive cash from the SEC Settlement if you are an "Injured Customer." An Injured Customer is a person or entity that purchased or otherwise acquired HealthSouth securities (common stock, bonds or options) on or after August 14, 1996, and held those securities on August 27, 2002 and/or March 19, 2003. (In addition, securities held on September 28, 1998, September 29, 1998 and/or September 30, 1998 may be included in the SEC Plan of Allocation on or before the Court hearing on February 7, 2008.)

You may be entitled to receive cash, stocks and warrants from the settlement in the class actions if you are a member of the Court-approved Stockholder Class and/or the Bondholder Class, and did not request exclusion.

You are a member of the Stockholder Class in the class actions if you purchased or otherwise acquired the stock or options of HealthSouth between April 24, 1997 and March 18, 2003, including HealthSouth securities received in exchange for the stock or options of certain companies that were acquired by HealthSouth.

You are a member of the Bondholder Class in the class actions if you purchased or otherwise acquired HealthSouth bonds, notes or other debt instruments between March 31, 1998 and March 18, 2003.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA – SOUTHERN DIVISION**

**NOTICE REGARDING PLANS OF ALLOCATION OF SETTLEMENT PROCEEDS AND APPLICATIONS FOR ATTORNEYS' FEES AND EXPENSES, AND DISTRIBUTION OF FAIR FUND BY THE U.S. SECURITIES AND EXCHANGE COMMISSION**

## If you purchased or acquired HealthSouth stock or bonds after August 14, 1996, you may be entitled to benefits from the settlements of SEC and class action lawsuits.

**The Federal Court authorized this Notice.  This is not a solicitation from a lawyer.**

- Several separate lawsuits filed by private parties and the United States Securities and Exchange Commission ("SEC") claim that HealthSouth Corporation ("HealthSouth") and others provided investors with false and misleading information in violation of federal securities laws.

- The SEC has entered into a $100 million settlement with HealthSouth (the "SEC Settlement") for investors who purchased or otherwise acquired HealthSouth stock, bonds or options on or after August 14, 1996 and held those securities on August 27, 2002 and/or March 19, 2003.  (In addition, securities held on September 28, 1998, September 29, 1998 and/or September 30, 1998 may be included in the SEC Plan of Allocation on or before the Court hearing on February 7, 2008.)  The private parties also partially settled their claims against HealthSouth and other settling defendants on behalf of a "Class" or group of HealthSouth stockholders, who purchased or otherwise acquired the stock or options of HealthSouth stock between April 24, 1997 and March 18, 2003, and on behalf of a Class of HealthSouth bondholders, who purchased or otherwise acquired HealthSouth bonds, notes or other debt instruments between March 31, 1998 and March 18, 2003 (the "class actions").  The class actions settlement was valued at the time it was reached at approximately $445 million (in cash and securities).  Due to subsequent fluctuations in HealthSouth's stock price, the settlement's value may increase or decrease by the time it is distributed.  Under the terms of the settlement, HealthSouth paid $230 million in cash and will issue after adjustment for HealthSouth's one-for-five reverse stock split, 5,023,732 shares of HealthSouth common stock and 8,151,265 warrants.

- Benefits from both of the settlements will be distributed to eligible HealthSouth investors who file claims.  In addition, investors who are Class Members in the class action cases have choices to make before the Court decides whether to approve the Plan of Allocation of the settlement benefits and requested attorneys' fees.  Your rights are affected whether you act or don't act, so **_please read this Notice carefully_**.

- Your recovery from the class actions Settlement Fund will depend on a number of variables, including the number of shares of HealthSouth common stock, options or bonds, notes or other debt instruments ("Notes") you purchased during the relevant time periods and the timing of your purchases and any sales.  Available information concerning the trading of Notes does not permit a useful estimate to be provided concerning the number of affected Notes or the estimated payment per Note on these transactions.  Based on information currently available to counsel for the Stockholder Class, it is assumed that the Bondholder Class damages are no more than 30% of the total damages.  Assuming that the Bondholder Class damages are 30% or less of the total damages, and if claims are submitted for 100% of the eligible shares of HealthSouth common stock (which is not expected to occur), the average distribution per share of HealthSouth common stock would be approximately $0.275 in cash, plus (after adjustment for HealthSouth's one-for-five reverse stock split) .6% shares of HealthSouth common stock and .9% warrants, before deduction of court-approved attorneys' fees and expenses.  Finally, this is a partial settlement and, although no assurances can be given, the claims asserted in the class actions against the Non-Settling Defendants will continue to be prosecuted and may result in additional recoveries.

- To date, counsel representing the Bondholder Class and the Stockholder Class have not received any payment for their services in conducting the class actions, nor have they been paid for their expenses.  As set forth in the Plan of Allocation for the class actions described below and in Appendix I, the amount of the Settlement Fund to be divided between the Stockholder Class and the Bondholder Class will not be known until all claims are filed with and evaluated by the Claims Administrator and approved by the Court.  For purposes of providing to members of the Stockholder and Bondholder Classes notice of their fee requests, Lead Counsel will provide two estimates.  In the first estimate, which Lead Plaintiffs' Counsel believe is the most realistic, it is assumed that 30% of the Settlement Fund will be

**Questions?  Call toll free 1-888-952-9108, or visit <u>HLSSettlement.com</u>**
**Page 1**

allocated to the Bondholder Class, with the remaining 70% of the Settlement Fund allocated to the Stockholder Class.  In the second estimate, Lead Plaintiffs' Counsel have assumed that each Class will receive 100% of the Net Settlement Fund.  Although neither Class will receive 100% (which would require the other Class to receive 0%) of the Settlement Fund, Lead Counsel is including this second estimate solely to provide the members of both Classes with the maximum amount of fees theoretically possible.  Plaintiffs' Counsel will apply for attorneys' fees as follows:

**Counsel for the Stockholder Class:**  Stockholder Plaintiffs' Lead Counsel intends to apply for an award of attorneys' fees in an amount not to exceed 17.5% of the Settlement Fund allocated to the Stockholder Class, plus reimbursement of expenses not to exceed $5,100,000.  Assuming that the Stockholder Class claims comprise 70% of the total claims, the average cost per share of HealthSouth common stock for attorneys' fees and expenses of counsel for the Stockholder Class will be $0.057 in cash, plus (after adjustment for HealthSouth's one-for-five reverse stock split) .1% shares of HealthSouth common stock and .15% warrants.  Assuming that the Stockholder Class claims comprise 100% of the total claims, the average cost per share of HealthSouth common stock for attorneys' fees and expenses of counsel for the Stockholder Class will be $0.077 in cash, plus (after adjustment for HealthSouth's one-for-five reverse stock split) .15% shares of HealthSouth common stock and .2% warrants.  In addition, counsel appointed separately for the merger subclasses will request (i) a portion of the 17.5% fee described above (which would not change the per share calculations) and/or (ii) a fee up to an additional 4% of the Settlement Fund allocated to the Stockholder Class (which, if awarded over and above the 17.5% fee, would change the per share calculations proportionally), plus expenses not to exceed $85,000.

**Counsel for the Bondholder Class:**  Bondholder Plaintiff's Lead Counsel intends to apply for an award of attorneys' fees in an amount not to exceed 10% of the Settlement Fund allocated to the Bondholder Class, plus reimbursement of expenses not to exceed $1,500,000.  Assuming that the Bondholder Class claims comprise 30% of the total claims, the amount for attorneys' fees and expenses for counsel for the Bondholder Class will be $8,400,000 in cash, plus (after adjustment for HealthSouth's one-for-five reverse stock split) 150,711 shares of HealthSouth common stock and 244,537 warrants.  Assuming that the Bondholder Class claims comprise 100% of the total claims, the amount of attorneys' fees and expenses for counsel for the Bondholder Class will be $24,400,000 in cash, plus (after adjustment for HealthSouth's one-for-five reverse stock split) 502,373 shares of HealthSouth common stock and 815,126 warrants.  Application also will be made for reimbursement to the lead plaintiff and class representatives in the Bondholder Action for a total amount not to exceed $60,000 for reimbursement of their reasonable costs and expenses (including lost wages) directly relating to their representation of the Bondholder Class.

### YOUR RIGHTS AND CHOICES:

| You may: | Summary | Deadline | Read more |
|---|---|---|---|
| **File a claim form** | This is the only way to receive benefits from the settlements.  A claim form is included with this Notice. | ***Postmarked by February 28, 2008*** | Page 5 |
| **Object** | If you didn't previously exclude yourself from the Class, you can write to the Court about why you don't like the proposed Plan of Allocation in the class actions or the proposed attorneys' fees.  You can also ask to speak in Court about your objections. | ***Received and filed by December 15, 2007*** | Page 6 |
| **Appear in the class actions** | You can, but do not have to, hire your own lawyer and make an appearance in the class actions. | ***Filed by December 15, 2007*** | Pages 7-8 |
| **Do nothing** | If you do not file a claim form as set forth herein, you will not receive benefits from the settlements, but will be bound by the Judgment entered in the class actions as defined below. | ***All claim forms must be received by February 28, 2008*** | Page 7 |

- Please read on.  Your rights and choices are further explained in this Notice.

| What This Notice Contains |
|---|

**BASIC INFORMATION** ...................................................................................................................... **PAGE 4**

1. Why did I get this Notice?
2. What are the lawsuits about?
3. What are the terms of the HealthSouth Settlements?

**WHO IS IN THE SETTLEMENTS** .......................................................................................................... **PAGE 4**

4. How do I know if I'm entitled to benefits from the HealthSouth Settlements?

**DISTRIBUTION OF SETTLEMENT BENEFITS** ........................................................................................ **PAGE 5**

5. How will the benefits in the class actions be allocated?
6. How will the money from the SEC Settlement be allocated?

**HOW TO OBTAIN SETTLEMENT BENEFITS** .......................................................................................... **PAGE 5**

7. How do I get benefits from the HealthSouth Settlements?
8. Is there a deadline for sending in my claim form?
9. Can I receive benefits from both settlements?
10. How much will I receive from the settlements?
11. When will I receive my settlement benefits?
12. Should I keep records of my HealthSouth securities purchases and sales?

**YOUR RIGHTS — OBJECTING TO THE PLAN OF ALLOCATION OR ATTORNEYS' FEES** ............................ **PAGE 6**

13. Can I tell the Court I don't like the Plan of Allocation or request for attorneys' fees?
14. How do I object to the Plan of Allocation or attorneys' fees?

**YOUR RIGHTS — APPEARING IN THE CLASS ACTIONS** ........................................................................ **PAGE 7**

15. Can I appear in the class actions through my own lawyer?
16. How do I make an appearance in the class actions?
17. Can I get out of the HealthSouth Settlements or the Classes in the class actions?

**IF YOU DO NOTHING** ...................................................................................................................... **PAGE 7**

18. What happens if I do nothing at all?

**THE LAWYERS REPRESENTING YOU** .................................................................................................. **PAGE 7**

19. Do I have a lawyer in the HealthSouth Settlements?
20. How much will the lawyers be paid, and how will they be paid?

**THE COURT HEARING ON THE PLAN OF ALLOCATION AND APPLICATIONS FOR ATTORNEYS' FEES** ........ **PAGE 8**

21. When and where will the Court decide whether to approve the Plan of Allocation and requested attorneys' fees?
22. Do I have to come to the hearing?
23. Can I speak at the hearing?

**GETTING MORE INFORMATION** ........................................................................................................ **PAGE 8**

24. Are more details about the lawsuits and HealthSouth Settlements available?

**SPECIAL NOTICE TO NOMINEES** ...................................................................................................... **PAGE 8**

**APPENDIX I** .................................................................................................................................... **PAGE 9**

**APPENDIX II** ................................................................................................................................... **PAGE 11**

## BASIC INFORMATION

### 1.   Why did I get this Notice?

You or someone in your family may have purchased securities of HealthSouth on or after August 14, 1996.  The Court sent you this Notice because you have the right to know about a plan to distribute benefits from court-approved settlements of lawsuits filed against HealthSouth and others that can affect you.  You have legal rights and choices to make before the Court decides whether to approve the Plans of Allocation and pay attorneys' fees and expenses.

This Notice explains:

- What the lawsuits are about.
- Who is included in the settlements.
- How the settlements may benefit you.
- What your legal rights are.
- How to get settlement benefits.

### 2.   What are the lawsuits about?

A lawsuit against HealthSouth was filed in the United States District Court for the Northern District of Alabama, Southern Division by the United States Securities and Exchange Commission ("SEC").  The name of that lawsuit is *Securities and Exchange Commission v HealthSouth Corporation and Richard M. Scrushy*, Civil Action No. CV-03-J-0615-S (the "**SEC case**").

Several other lawsuits have been filed as class actions against HealthSouth and other individuals asking for money damages on behalf of certain purchasers of HealthSouth securities.  The lawsuits claim that HealthSouth and others provided investors with false and misleading financial information that artificially inflated the value of HealthSouth securities.  The class action lawsuits were consolidated into two cases in the same Court.  The name of the consolidated lawsuits are *In re HealthSouth Stockholder Litigation*, Master File No. CV-03-BE-1501-S and *In re HealthSouth Bondholder Litigation*, Master File No. CV-03-BE-1502-S.  These consolidated lawsuits are called the "**class actions**" in this Notice.

### 3.   What are the terms of the HealthSouth Settlements?

A $100 million settlement of the SEC case has already been approved by the Court (the "**SEC Settlement**").

On behalf of the two classes of HealthSouth investors in the class actions, the Court has approved a settlement valued at the time it was reached at approximately $445 million (in cash and securities).  Due to subsequent fluctuations in HealthSouth's stock price, the settlement's value may increase or decrease by the time it is distributed.  Under the terms of the class actions settlement, HealthSouth has paid $230 million in cash, and, after adjustment for HealthSouth's one-for-five reverse stock split, will issue 5,023,732 shares of HealthSouth common stock and 8,151,265 warrants.  The parties in the class actions now are asking the Court to approve a plan for allocating and distributing the settlement proceeds to eligible investors (the "Plan of Allocation"), after approval and payment of attorneys' fees and litigation expenses.

Both the SEC Settlement and the settlement in the class actions together are called the "**HealthSouth Settlements**" in this Notice.

Please read further to determine if you are entitled to benefits under the HealthSouth Settlements.

## WHO IS IN THE SETTLEMENTS

*To see if you will get benefits from the HealthSouth Settlements, you need to make sure you are a Class Member in one or both of the class actions, or an Injured Customer in the SEC Settlement.*

### 4.   How do I know if I'm entitled to benefits from the HealthSouth Settlements?

You may be entitled to receive money or benefits from the SEC Settlement or the class actions, or both.

You can file a claim and receive cash from the SEC Settlement if you are an "Injured Customer."  An Injured Customer is a person or entity that purchased or otherwise acquired HealthSouth securities (common stocks, bonds or options) on or after August 14, 1996, and held those securities on August 27, 2002 and/or March 19, 2003.  (In addition, securities held on September 28, 1998, September 29, 1998 and/or September 30, 1998 may be included in the SEC Plan of Allocation on or before the Court hearing on February 7, 2008.)

You may be entitled to receive cash, stocks and warrants from the settlement in the class actions if you are a member of the Court-approved Stockholder Class and/or the Bondholder Class.

You are a member of the Stockholder Class in the class actions if you purchased or otherwise acquired the stock or options of HealthSouth between April 24, 1997 and March 18, 2003, including HealthSouth securities received in exchange for the stock or options of certain companies that were acquired by HealthSouth, and you did not request exclusion.

You are a member of the Bondholder Class in the class actions if you purchased or otherwise acquired HealthSouth bonds, notes or other debt instruments between March 31, 1998 and March 18, 2003, and you did not request exclusion.

## DISTRIBUTION OF SETTLEMENT BENEFITS

### 5.   How will the benefits in the class actions be allocated?

Counsel for the Stockholder and Bondholder Classes in the class actions have proposed a Plan of Allocation that must be approved by the Court.   That Plan provides that a portion of the Settlement Fund (less Court-awarded attorneys' fees and costs) will be allocated to the Bondholder Class by multiplying the fund by a percentage equal to: (a) the total dollar value of all eligible Bondholder Class claims divided by the total dollar value of all eligible Bondholder and Stockholder Class claims, plus (b) 500 basis points.

The remainder will be allocated to the Stockholder Class, of which (i) $4.45 million will be allocated to claims related solely to claims relating to HealthSouth options, (ii) $22.5 million will be allocated solely to claims for the acquisition of HealthSouth stock and/or options in HealthSouth's mergers with Horizon/CMS, The Company Doctor, or National Surgery Centers (the "merger subclasses"), and (iii) the balance will be allocated pro-rata among all claimants who purchased or otherwise acquired HealthSouth stock, including the merger subclasses.

Payment amounts to Class Members will be determined based on a formula that considers various factors, including the numbers of shares or bonds purchased, and the timing of the purchases and sales.   You can read the entire Plan of Allocation in Appendix I to this Notice.

However, please remember that you'll be eligible to receive benefits only if you had a net loss, after all profits from transactions in HealthSouth securities are subtracted from all losses on your HealthSouth transactions.

### 6.   How will the money from the SEC Settlement be allocated?

The Court will approve a Plan of Allocation for the $100 million SEC Settlement Fund to eligible investors in the SEC Settlement.   If you're eligible, the amount of your payment will be calculated through a formula that applies a baseline compensation amount to each HealthSouth stock or bond you purchased on or after August 14, 1996 that you still held on August 27, 2002 and/or March 19, 2003.   (In addition, securities held on September 28, 1998, September 29, 1998 and/or September 30, 1998 may be included in the SEC Plan of Allocation on or before the Court hearing on February 7, 2008.)   The baseline compensation amounts vary, depending on when you purchased and sold or held the securities.   You can review the baseline compensation calculations by reading the SEC Settlement Plan of Allocation in Appendix II to this Notice.   The Plan of Allocation in the SEC Settlement is different from the Plan of Allocation in the class actions settlement because the two settlements are based on different allegations of violations under the securities law.

However, please remember that the maximum amount you can receive from the SEC Settlement is your <u>actual loss</u> on the securities.   Your actual loss on securities purchased on or after August 14, 1996 and held on August 27, 2002 and/or March 19, 2003 is the difference between the purchase price and the sale price of that unit. In addition, securities held on September 28, 1998, September 29, 1998 and/or September 30, 1998 may be included in the SEC Plan of Allocation on or before the Court hearing on February 7, 2008.)   In addition, no payments will be made to investors whose allowed amounts are less than $10.00.

## HOW TO OBTAIN SETTLEMENT BENEFITS

### 7.   How do I get benefits from the HealthSouth Settlements?

You must file a claim form in order to receive benefits from the HealthSouth Settlements.   A claim form is included with this Notice.   Please remember that you only need to submit **one** claim form for both settlements.

### 8.   Is there a deadline for sending in my claim form?

Yes.   Your completed claim form must be mailed, **postmarked by February 28, 2008** to the following address:

HealthSouth Securities Settlement
201 S. Lyndale Avenue, Suite S-3
P.O. Box 1906
Faribault, MN 55021-7161

### 9.   Can I receive benefits from both settlements?

Yes.   If you're an eligible Injured Customer and an eligible Stockholder or Bondholder Class Member, you'll receive benefits from both Settlements.   But you still need to complete only one claim form.

### 10. How much will I receive in the settlements?

If you are eligible, you will receive two payments, one from the SEC Settlement and one from the class actions.   You may or may not receive your cash payments in one check. Your payments will be calculated based on the Plans of Allocation approved by the Courts and attached as Appendix I and Appendix II.

The two plans cover the same securities and are generally similar in calculation methodology.

The Plan of Allocation in the SEC Settlement is different from the Plan of Allocation in the class actions settlement because the two settlements are based on different allegations of violations under the securities law. The primary differences are:

1) The periods that you purchased or otherwise acquired HealthSouth securities are different for the SEC Settlement and the class actions;

2) The class actions provide an additional payment factor to bonds, notes or other debt instruments and merger subclasses that are not included in the SEC Settlement; and

3) The SEC distribution is in cash and the class actions distribute stock and warrants in addition to cash.

### 11. When will I receive my settlement benefits?

You will receive your payments after the Courts have approved the distribution of payments, which will occur after all claims are processed.  It is anticipated that payments could be mailed to you by June 30, 2008 but the actual mail date will depend on when the Courts approve each distribution for mailing.  Objections and/or appeals could delay the Court's approval of the class actions distribution.

You should periodically check the Internet site, www.HLSSettlement.com, for updates about the timing of the distribution of settlement benefits.

### 12. Should I keep my records of HealthSouth securities purchases and sales?

Yes.  You may need your transaction records in order to verify your claim.  However, if you need to provide records for your claim, be sure to send copies, not your original records.

## YOUR RIGHTS – OBJECTING TO THE PLAN OF ALLOCATION OR ATTORNEYS' FEES REQUEST

*You can tell the Court if you don't like the Plan of Allocation or applications for attorneys' fees in the class actions.  This is called objecting.*

### 13.    Can I tell the Court I don't like the Plan of Allocation or the request for attorneys' fees?

Yes.  If you're a member of the Bondholder or Stockholder Class in the class actions, you may tell the Court you don't like the Plan of Allocation or some part of it.  You may also object to the amount of the fees that Plaintiffs' Counsel are asking the Court to approve.  The Court will consider your views.  You may also object to the plan to distribute the funds obtained in the SEC Settlement.

### 14.    How do I object to the Plan of Allocation or attorneys' fees?

To object, you must send a written statement that contains all of the following:

- The name of the lawsuit, *In re HealthSouth Stockholder Litigation,* Master File No. CV-03-BE-1501-S or *In re HealthSouth Bondholder Litigation,* Master File No. CV-03-BE-1502-S, or *Securities and Exchange Commission v HealthSouth Corporation and Richard M. Scrushy*, Civil Action No. CV-03-J-0615-S;
- Information sufficient to show you are a member of the Stockholder or Bondholder Class, or an Injured Customer, as applicable, including the amount and type of HealthSouth securities purchased and sold during the eligible time periods and held at the end of the eligible time periods;
- A statement of the reasons for your objections;
- Copies of any evidence or documents you want the Court to consider; and if you (or your lawyer) want to appear and speak at the Court's hearing on the Plan of Allocation or attorneys' fee request (see Question 21 below) you must provide a statement that you wish to appear and speak, the identity of any witnesses you want to call to testify, and copies of exhibits you intend to introduce at the hearing.

You must mail your objection to all of the following:

| The Court | Counsel to HealthSouth | Counsel to HealthSouth |
|---|---|---|
| Clerk of the Court<br>United States District Court<br>140 Hugo L. Black United<br>States Courthouse<br>1729 Fifth Avenue North<br>Birmingham, AL 34203-2000 | HealthSouth Corporation<br>One HealthSouth Parkway<br>Birmingham, AL 35243<br>Attn:  John Whittington | Bradley Arant Rose & White LLP<br>Julia Boaz Cooper<br>One Federal Plaza<br>1819 Fifth Avenue North<br>Birmingham, AL 35203 |

**and**

| Lead Counsel for Stockholder Lead Plaintiffs and Class: | Lead Counsel for Bondholder Lead Plaintiff and Class: | Counsel for Merger Subclasses: |
|---|---|---|
| Coughlin Stoia Geller Rudman & Robbins LLP<br>Keith F. Park<br>Joy Ann Bull<br>655 W. Broadway, Suite 1900<br>San Diego, CA 92101 | Bernstein Litowitz Berger & Grossmann LLP<br>John P. Coffey<br>Jeffrey N. Leibell<br>1285 Avenue of the Americas, 38th Floor<br>New York, NY 10019 | Schatz Nobel Izard, P.C.<br>Andrew M. Schatz<br>One Corporate Center<br>20 Church Street, Suite 1700<br>Hartford, CT 06103 |
| Labaton Sucharow LLP<br>Thomas A. Dubbs<br>James W. Johnson<br>140 Broadway, 34th Floor<br>New York, NY 10005 | Cunningham, Bounds, Crowder<br>Brown & Breedlove, LLC<br>Robert T. Cunningham, Jr.<br>1601 Dauphin Street, P.O. Box 66705<br>Mobile, AL 36660 | |

Please remember that your objection must be received by all of the foregoing <u>no later than December 15, 2007</u>.

## YOUR RIGHTS – APPEARING IN THE CLASS ACTIONS

### 15.    Can I appear in the class actions through my own lawyer?

Yes.  You may (but do not have to) have your own lawyer participate and speak for you in the class actions.  This is called making an appearance.  If you do this, you'll have to pay for the lawyer yourself.

### 16.    How do I make an appearance in the class actions?

If you want your own lawyer instead of the lawyers for the Classes to participate or speak for you in the class actions, your lawyer must give the Court a paper that is called a "Notice of Appearance."  The Notice of Appearance should be filed with the Court, and copies sent to the lawyers listed in paragraph 14 above.

### 17.    Can I get out of the HealthSouth Settlements or the Classes in the class actions?

No.  The Court in the class actions has already approved certification of the Bondholder and Stockholder Classes for purposes of the settlement of the class actions.  Notice of that certification and the partial settlement was given nationwide, with a deadline of December 8, 2006 for Class Members to exclude themselves.

There's no need to exclude yourself from the SEC Settlement because participation in the SEC Settlement does not affect any of your legal rights to sue HealthSouth.

## IF YOU DO NOTHING

### 18.    What happens if I do nothing at all?

If you do nothing, you won't receive any money or benefits from the HealthSouth Settlements or the SEC Settlement.   Please remember, in order to receive benefits, you must file a claim form by February 28, 2008.

## THE LAWYERS REPRESENTING YOU

### 19.    Do I have a lawyer in the HealthSouth Settlements?

In the class actions, the Court has appointed lawyers to represent you and all Class Members.  These lawyers are called Lead Plaintiffs' Counsel, and all of their names and addresses are listed in Question number 14 above.  You will not be charged for these lawyers.

In addition, lawyers for the SEC represent the government in the SEC Settlement.  As in all government enforcement actions, you won't be charged any attorneys' fees.

### 20.    How much will the lawyers be paid, and how will they be paid?

At the hearing, Stockholder Plaintiffs' Lead Counsel will request the Court to award attorneys' fees of up to 17.5% of the Settlement Fund allocated to the Stockholder Class, plus expenses not to exceed $5,100,000, and counsel for the merger subclasses will request attorneys' fees of up to 4% of the Settlement Fund allocated to the Stockholder Class and/or some portion of the 17.5% fee described above, plus expenses not to exceed $85,000.  Counsel in the Bondholder Action will request the Court to award attorneys' fees of up to 10% of the Settlement Fund allocated to the Bondholder Class, plus expenses not to exceed $1,500,000.   Application also will be made for reimbursement to the lead plaintiff and class representatives in the Bondholder Action for a total amount not to exceed $60,000 for reimbursement of their reasonable costs and expenses (including lost wages) directly relating to their representation of the Bondholder Class.  Such sums as may be approved by the Court will be paid from the Settlement Fund in the class actions.  Class Members are not personally liable for any such fees or expenses.

Counsel for the Stockholder and Bondholder Classes have committed a significant amount of time to the lawsuits.  Counsel for the Stockholder Class filed their initial lawsuit in 1998, have litigated extensively since that time on behalf of the Stockholder Class, and believe their fee request

is fair and reasonable based on the complexity and length of the Stockholder Class litigation. Counsel for the Bondholder Class have diligently prosecuted claims on behalf of the Bondholder Class since the Bondholder Action was commenced in 2003, and believe that their fee represents fair and reasonable compensation based on the high complexity of the Bondholder Action and their substantial prosecution effort. To date, counsel have not received any payment for their services, nor have they been reimbursed any of their costs of litigation. Counsel believe the fees requested will fairly pay them for their efforts and their risk in bringing the class actions on a contingent basis, and that the fees are within the ranges of fees paid in similar cases.

No attorneys' fees or expenses will be paid out of the $100 million settlement in the SEC case.

## THE COURT HEARING ON THE PLAN OF ALLOCATION AND ATTORNEYS' FEES

*The Court will hold a hearing to consider everyone's views and to decide whether to approve the Plans of Allocation and attorneys' fees and expenses in the class actions. You may attend and you may ask to speak, but you don't have to.*

| **21.** | **When and where will the Court decide whether to approve the Plans of Allocation and attorneys' fees?** |
|---|---|

The Federal District Judges will hold a hearing on the Plans of Allocation and class action attorneys' fees at 1:30 p.m. on **February 7, 2008**. The Court is located at 140 Hugo L. Black United States Courthouse, 1729 Fifth Avenue North, Birmingham, Alabama. The Court may adjourn the hearing without sending further notice to you. If you plan to attend the hearing, you should check the website (www.HLSSettlement.com) for more information, or you also send an email to mail@HLSSettlement.com, write to HealthSouth Securities Settlement, 201 S. Lyndale Avenue, Suite S-3, PO Box 1906, Faribault, MN 55021-7161, or, if you are a member of one or both of the classes, you may contact lead counsel identified in question 14 of this notice.

At the hearing, the Court will consider any objections, and listen to people who have asked to speak at the hearing. At or after the hearing, the Court will decide: (1) whether to approve the Plan of Allocation in the class actions as fair and reasonable; and (2) whether to approve the applications for attorneys' fees and expenses. The Court in the SEC case will allow claimants an opportunity to object to the plan to distribute the SEC Settlement.

The Federal District Judges may approve the Plans of Allocation with modifications without further notification to the Class.

| **22.** | **Do I have to come to the hearing?** |
|---|---|

You don't have to come to the hearing. The lawyers for the Classes will answer questions the Court has. But you or your lawyer are welcome to come at your own expense. If you send an objection, you don't have to come to the hearing for the Court to consider it.

| **23.** | **Can I speak at the hearing?** |
|---|---|

If you send a valid objection, you may ask to speak about it at the hearing. To do so, your objection must say that you want to speak at the hearing. (*See* Question 14 above.)

## GETTING MORE INFORMATION

| **24.** | **Are more details about the lawsuits and the HealthSouth Settlements available?** |
|---|---|

Yes. If you have additional questions, please call 1-888-952-9108; visit www.HLSSettlement.com; send an email to mail@HLSSettlement.com, or write to HealthSouth Securities Settlement, 201 S. Lyndale Avenue, Suite S-3, P.O. Box 1906, Faribault, MN 55021-7161.

In addition, you may read the documents filed with the Court in the class actions and SEC case during business hours at the Office of the Clerk of Court, 140 Hugo L. Black United States Courthouse, 1729 Fifth Avenue North, Birmingham, Alabama. If you need assistance to complete the claim form, or if you have any questions about the settlements, you may call the toll-free number at 1-888-952-9108, or you can send an e-mail to mail@HLSSettlement.com, or, if you are a member of one of the classes, you may contact Lead Counsel in the class actions as identified in question 14 of the notice. You can also obtain information by visiting the Internet site, www.HLSSettlement.com.

Please do not contact the Clerk or the Court, as they cannot answer any questions you have about the lawsuits or the HealthSouth Settlements.

## ***SPECIAL NOTICE TO NOMINEES***

By order of the Court and pursuant to the Plan of Allocation in the SEC Settlement, if you are a nominee or broker that holds or held HealthSouth securities purchased or otherwise acquired between August 14, 1996 and March 19, 2003, as nominees for beneficial owners, you must provide, within 10 days, to the Fund Administrator appointed by the Court in the SEC Settlement:

(1) The names and addresses of the identified beneficial owners; and

(2) All transactional data of purchases, acquisition, sales, transfers, exchanges and holdings of HealthSouth securities for the relevant dates for each beneficial owner.

For more information about this requirement, please visit www.HLSSettlement.com, or call 1-888-952-9108. You will be reimbursed by HealthSouth for all reasonable administration costs you incur in connection with the provision of such data.

**Questions?  Call toll free 1-888-952-9108, or visit HLSSettlement.com**

## APPENDIX I:  CLASS ACTIONS PLAN OF ALLOCATION FOR STOCKHOLDER CLASS AND BONDHOLDER CLASS

The Settlement Fund will be distributed to Class Members who submit valid, timely Proof of Claim and Release forms under the Plan of Allocation described below.  Under the Plan of Allocation, the date of purchase or sale is the "contract" or "trade" date as distinguished from the "settlement" date.

For Class Members who held HealthSouth securities at the beginning of the Stockholder Class Period or the Bondholder Class Period or made multiple purchases or other acquisitions or sales during the Stockholder Class Period or the Bondholder Class Period, the first-in, first-out ("FIFO") method will be applied to such holdings, purchases and sales for purposes of calculating a claim.  Under the FIFO method, sales of securities during the Stockholder Class Period and the Bondholder Class Period will be matched, in chronological order, first against securities held at the beginning of the Stockholder Class Period and the Bondholder Class Period.  The remaining sales of securities during the Stockholder Class Period and the Bondholder Class Period will then be matched, in chronological order, against shares purchased during the Stockholder Class Period and the Bondholder Class Period.

A Class Member will be eligible to receive a distribution from the settlement proceeds in the Federal Actions only if a Class Member has a net loss, after all profits from transactions in HealthSouth securities during the Stockholder Class Period and the Bondholder Class Period are subtracted from all losses.  However, the proceeds from sales of securities which have been matched against securities held at the beginning of the Stockholder Class Period and the Bondholder Class Period will not be used in the calculation of such net loss.  No distributions will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00.

The Court has reserved jurisdiction to allow, disallow or adjust the claim of any Class Member on equitable grounds.

Payment pursuant to the Plan of Allocation set forth above shall be conclusive against all Authorized Claimants.  No Person shall have any claim against counsel for the Stockholder Class and counsel for the Bondholder Class or any claims administrator or other Person designated by counsel for the Stockholder Class and counsel for the Bondholder Class based on distributions made substantially in accordance with the Stipulation and the settlement contained therein, the Plan of Allocation, or further orders of the Court.  All Class Members who fail to complete and file a valid and timely Proof of Claim and Release form shall be barred from participating in distributions from the Settlement Fund (unless otherwise ordered by the Court), but otherwise shall be bound by all of the terms of the Stipulation, including the terms of the Judgment entered and the releases given.

### Bondholder Class
The portion of the Settlement Fund allocated to the Bondholder Class shall be calculated by multiplying the Settlement Fund by a percentage equal to: (a) the total dollar value of all eligible Bondholder Class claims divided by the total dollar value of all eligible Bondholder Class claims and all eligible Stockholder Class claims; plus (b) 500 basis points.  In addition, for the purpose of calculating total dollar value of the Stockholder claims, the aggregate claims for the option holders shall not exceed one percent of the total claims of the Bondholders and Common Stock Shareholders.  Each Bondholder claim shall be calculated based on the Bondholder Allocation below.  The Bondholder Class consists of persons who purchased the following HealthSouth debt securities:

    (a)  3.25% Convertible Debentures due 4/1/2003
    (b)  6.875% Senior Notes due 6/15/2005
    (c)  7.0% Senior Notes due 6/15/2008
    (d)  10.75% Senior Subordinated Notes due 10/1/2008
    (e)  8.5% Senior Notes due 2/1/2008
    (f)  8.375% Senior Notes due 10/1/2011
    (g)  7.375% Senior Notes due 10/1/2006
    (h)  7.625% Senior Notes due 6/1/2012

### Bondholder Allocation
For HealthSouth Notes and Debentures purchased from March 31, 1998 through March 18, 2003, and

    (a)  sold prior to August 27, 2002, the claim per $1,000 par value Note/Debenture is $0;
    (b)  sold from August 27, 2002 through January 16, 2004, the claim per $1,000 par value Note/Debenture is the difference between the purchase price per $1,000 par value Note/Debenture (not to exceed $1,000) less the sales price per $1,000 Note/Debenture;
    (c)  retained as of January 16, 2004, the claim per $1,000 par value Note/Debenture is $0.

NOTE: On January 16, 2004, HealthSouth became current with all principal and interest payments due under borrowing agreements.

### Stockholder Class
The remaining portion of the Settlement Fund not allocated to the Bondholder Class shall be allocated to the Stockholder Class.

### Merger Class Allocation
In addition to participating in either the Option Class Allocation or the Common Stock Allocation described below, the Merger Class will be allocated $22.25 million from of the Stockholders' Settlement Proceeds, allocated based on the Common Stock Allocation below, and an option allocation that provides a claim of: (a) $0 if the option was exercised or expired prior to September 28, 1998; (b) $0.79 per option if the option was exercised or expired on September 28, 1998; (c) $2.67 per option if the option was exercised or expired on September 29, 1998; and (d) $4.51 per option if the option was retained at the end of September 29, 1998.  The Merger Class consists of plaintiffs who received HealthSouth common stock and/or options in the following mergers:

    (a)  Horizon/CMS
    (b)  The Company Doctor
    (c)  National Surgery Centers

**Stockholder Allocation**

The remaining settlement proceeds will be allocated to the Stockholder Class only based on the Common Stock and Option Allocations below.

**Allocation for The Common Stock**

The allocation for the Common Stock is based on the following market adjusted price declines:

| | |
|---|---|
| September 28, 1998: | $1.57 per share |
| September 29, 1998: | $3.76 per share |
| September 30, 1998: | $3.68 per share |
| August 27, 2002: | $5.09 per share |
| August 28, 2002: | $0.92 per share (mitigated for the partial rebound through September 3, 2002) |
| Following March 18, 2003: | $3.65 per share (March 18, 2003 closing price of $3.91 per share less 90-day average of $0.26 per share) |

1.  For shares of HealthSouth common stock that were purchased or otherwise acquired from April 24, 1997 through September 27, 1998, and

    (a) sold prior to September 28, 1998, the claim per share is $0;
    (b) sold on September 28, 1998, the claim per share is $1.57 per share;
    (c) sold on September  29, 1998, the claim per share is $5.33 per share;
    (d) sold from September 30, 1998 through August 26, 2002, the claim per share is $9.01 per share;
    (e) sold on August 27, 2002, the claim per share is $11.56 per share;
    (f) sold from August 28, 2002 to March 18, 2003, the claim per share is $12.02 per share;
    (g) retained at the close of trading on March 18, 2003, the claim per share is $13.85 per share.

2.  For shares of HealthSouth common stock that were purchased on September 28, 1998, and

    (a) sold on September 28, 1998, the claim per share is $0;
    (b) sold on September 29, 1998, the claim per share is $3.76 per share;
    (c) sold from September 30, 1998 through August 26, 2002, the claim per share is $7.44 per share;
    (d) sold on August 27, 2002, the claim per share is $9.99 per share;
    (e) sold from August 28, 2002 to March 18, 2003, the claim per share is $10.45 per share;
    (f) retained at the close of trading on March 18, 2003, the claim per share is $12.28 per share.

3.  For shares of HealthSouth common stock that were purchased on September 29, 1998, and

    (a) sold on September 29, 1998, the claim per share is $0;
    (b) sold from September 30, 1998 through August 26, 2002, the claim per share is $3.68 per share;
    (c) sold on August 27, 2002, the claim per share is $6.23 per share;
    (d) sold from August 28, 2002 to March 18, 2003, the claim per share is $6.69 per share;
    (e) retained at the close of trading on March 18, 2003, the claim per share is $8.52 per share.

4.  For shares of HealthSouth common stock that were purchased from September 30, 1998 through October 4, 2000, and

    (a) sold prior to August 27, 2002, the claim per share is $0;
    (b) sold on August 27, 2002, the claim per share is 50% of the lesser of: (i) the purchase price per share less the sales price per share; or (ii) $5.09 per share;
    (c) sold from August 28, 2002 to March 18, 2003, the claim per share is 50% of the lesser of: (i) the purchase price per share less the sales price per share; or (ii) $6.01 per share;
    (d) retained at the close of trading on March 18, 2003, the claim per share is 50% of the lesser of: (i) the purchase price per share less $0.26 per share; or (ii) $9.66 per share.

5.  For shares of HealthSouth common stock that were purchased from October 5, 2000 through August 26, 2002, and

    (a) sold prior to August 27, 2002, the claim per share is $0;
    (b) sold on August 27, 2002, the claim per share is the lesser of: (i) the purchase price per share less the sales price per share; or (ii) $5.09 per share;
    (c) sold from 8/28/2002 to 3/18/2003, the claim per share is the lesser of: (i) the purchase price per share less the sales price per share; or (ii) $6.01 per share;
    (d) retained at the close of trading on March 18, 2003, the claim per share is the lesser of: (i) the purchase price per share less $0.26 per share; or (ii) $9.66 per share.

6.  For shares of HealthSouth common stock that were purchased on August 27, 2002, and

    (a) sold on August 27, 2002, the claim per share is $0;
    (b) sold from August 28, 2002 to March 18, 2003, the claim per share is the lesser of: (i) the purchase price per share less the sales price per share; or (ii) $0.92 per share;
    (c) retained at the close of trading on March 18, 2003, the claim per share is the lesser of: (i) the purchase price per share less $0.26 per share; or (ii) $4.57 per share.

7.  For shares of HealthSouth common stock that were purchased from 8/28/2002 through 3/18/2003, and

   (a)  sold prior to March 18, 2003, the claim per share is $0 per share;
   (b)  retained at the close of trading on March 18, 2003, the claim per share is the lesser of: (i) the purchase price per share less $0.26 per share; or (ii) $3.65 per share.

### Allocation for the Options

The settlement proceeds available to the Options Class shall be limited to an amount equal to one percent of the Settlement Fund (approximately $4.45 million at the time of settlement).

### Call Options

1.  For Call Options on HealthSouth common stock that were purchased during the period April 24, 1997 through March 18, 2003, and

   (a)  owned at the end of one of the following dates: September 27, 1998, September 28, 1998, September 29, 1998, August 26, 2002, August 27, 2002 or March 18, 2003, the claim per Call Option is the difference between the price paid for the Call Option less the proceeds received upon the settlement of the Call Option contract;
   (b)  not owned at the end of one of the following dates: September 27, 1998, September 28, 1998, September 29, 1998, August 26, 2002, August 27, 2002 or March 18, 2003, the claim per Call Option is $0.

2.  For Call Options on HealthSouth common stock that were written during the period April 24, 1997 through March 18, 2003, the claim per Call Option is $0.

### Put Options

1.  For Put Options on HealthSouth common stock that were written during the period April 24, 1997 through March 18, 2003, and

   (a)  owned at the end of one of the following dates: September 27, 1998, September 28, 1998, September 29, 1998, August 26, 2002, August 27, 2002 or March 18, 2003, the claim per Put Option is the difference between the amount paid upon settlement of the Put Option contract less the initial proceeds received upon the sale of the Put Option contract.
   (b)  not owned at the end of one of the following dates: September 27, 1998, September 28, 1998, September 29, 1998, August 26, 2002, August 27, 2002 or March 18, 2003, the claim per Put Option is $0.

For Put Options on HealthSouth common stock that were purchased during the period April 24, 1997 through March 18, 2003, the claim per Put Option is $0.

Note: In the case the option was exercised for HealthSouth common stock, the amount paid, or proceeds received, upon the settlement of the option contract equals the intrinsic value of the option using HealthSouth common stock's closing price on the date the option was exercised.

### Acquired Options

Stock options on HealthSouth's common stock received in the Horizon/CMS, The Company Doctor or National Surgery Centers mergers will be entitled to receive a recovery per the stock option plan.  The purchase price for these options will be the difference between HealthSouth's closing price at the time of the respective mergers ($25.50 per share for Horizon/CMS, $27.38 per share for The Company Doctor and $28.13 per share for National Surgery Centers) and the exercise price of the option.

---

# APPENDIX II:  SEC PLAN OF ALLOCATION

Injured Customers are eligible for compensation as described below. An Injured Customer's Distribution Amount is based on the relative changes in the prices of the securities following the Disclosure Dates or the Injured Customer's actual losses.[1]  The relative change is determined by adjusting the change in the price of the HealthSouth securities following the Disclosure Dates by accounting for the overall market return; such a methodology ensures that the return on HealthSouth securities captures what cannot be explained by the broader market return.[2]  This approach gives the market-adjusted price changes, which constitute the *baseline compensation* per unit of security held.

An Injured Customer's eligibility for compensation is capped by the Injured Customer's actual loss on a security.  That is, the maximum eligible loss on a unit held on a Disclosure Date is the difference between the purchase price and the sale price of that unit.[3]

No Distribution Amount less than $10.00 will be paid.  The Fund Administrator may aggregate accounts held by any Injured Customer for purposes of meeting the $10.00 floor on distributions.

If the funds are insufficient to compensate the Injured Customers for their maximum eligible losses, a common proportional discount factor will be applied to the baseline compensation of all securities.

The draft distribution fund plan allocates $1 million to compensate Injured Customers who suffered losses on derivatives of HealthSouth securities.  These Injured Customers are eligible for compensation up to their actual losses provided they held Call or Put Options on HealthSouth common stock that were purchased between August 14, 1996 and March 18, 2003, and owned at the end of one of the following dates: August 26, 2002 or March 18, 2003.  If the total actual losses on derivatives of HealthSouth securities exceed $1 million, a common proportional discount factor will be applied to the Injured Customers' full losses.

---

[1] Specifically, compensation depends on the relative change in the security price during the a*djustment period*. The *adjustment period* is the time it takes the security price to return to a period (one day) of "normal" returns following a disclosure, and it is determined using statistical techniques: this period begins on the Disclosure Date and ends on the last consecutive day in which the daily return was statistically different from the market return.  An investor who sold the security during the a*djustment period* is only entitled to compensation up to the relative change in the price of the security between the Disclosure Date and the day of the sale.

[2] The S&P 500 index is used as the benchmark for the HealthSouth stock and the Vanguard Total Bond Index is used as the benchmark for the HealthSouth bonds.

[3] The purchase price and the sale price are determined by matching buys and sells ("round trips") using a FIFO (First In First Out) principle.  Profits on one unit are not netted against losses incurred on other units by the same investor.

For a fully copy of the SEC Plan of Allocation that has been approved by the Court, go to www.HLSSettlement.com.

**HealthSouth Stock**[4]

Baseline compensation for HealthSouth common stock:[5]

1. Stocks purchased between 8/14/1996 and 8/26/2002 and sold on or before 3/18/2003:
   a. $5.09 if sold on 8/27/2002
   b. $6.63 if sold on 8/28/2002
   c. $6.01 if sold on 8/29/2002
   d. $6.31 if sold on 8/30/2002
   e. $6.01 if sold on or after 9/3/2002 and on or before 3/18/2003.

2. Stocks purchased on or after 8/27/2002 and on or before 3/18/2003 sold on or after 3/20/2003: $3.80. Any stocks held as of the close of trading 3/20/2003 will be treated as liquidated on 3/20/2003.

3. Stocks purchased between 8/14/1996 and 8/26/2002 and sold on or after 3/20/2003: $9.81. Any stocks held as of the close of trading 3/20/2003 will be treated as liquidated on 3/20/2003.

**HealthSouth Bonds**[6]

Baseline compensation per bond with a par value of $1,000. Any bonds held as of the close of trading on 3/31/2003 will be treated as liquated on 3/31/2003.[7]

1. Bonds purchased between 3/20/1998 and 8/26/2002 and sold on or before 3/18/2003:

| Date of Sale | 7% Senior Notes Due 6/15/2008 | 7.625% Senior Notes Due 6/1/2012 | 10.75% Senior Notes Due 10/1/2008 | 8.5% Senior Notes Due 2/1/2008 | 7.375% Senior Notes Due 10/1/2006 | 8.375% Senior Notes Due 10/1/2011 | 6.875% Senior Notes Due 6/15/2005 | 3.25% Convertible Debentures Due 4/1/2003 |
|---|---|---|---|---|---|---|---|---|
| 8/27/2002 | $117.70 | $122.70 | $95.00 | $132.60 | $112.70 | $137.60 | $114.60 | $15.20 |
| 8/28/2002 | $159.70 | $164.10 | $172.30 | $174.70 | $164.70 | $164.70 | $151.40 | $33.70 |
| 8/29/2002 or after | $180.70 | $192.70 | $172.30 | $174.70 | $164.70 | $164.70 | $181.00 | $33.70 |

2. Bonds purchased between 8/27/2002 and 3/18/2003 and sold on or after 3/20/2003:

| Date of Sale | 7% Senior Notes Due 6/15/2008 | 7.625% Senior Notes Due 6/1/2012 | 10.75% Senior Notes Due 10/1/2008 | 8.5% Senior Notes Due 2/1/2008 | 7.375% Senior Notes Due 10/1/2006 | 8.375% Senior Notes Due 10/1/2011 | 6.875% Senior Notes Due 6/15/2005 | 3.25% Convertible Debentures Due 4/1/2003 |
|---|---|---|---|---|---|---|---|---|
| 3/20/2003 | $379.50 | $377.10 | $619.50 | $431.90 | $401.90 | $392.00 | $416.80 | $606.60 |
| 3/21/2003 | $407.90 | $410.40 | $728.70 | $460.20 | $445.20 | $435.30 | $475.00 | $822.80 |
| 3/24/2003 | $407.90 | $395.00 | $714.30 | $452.30 | $445.20 | $417.30 | $457.10 | $788.50 |
| 3/25/2003 | $407.90 | $377.50 | $704.30 | $432.30 | $445.20 | $402.30 | $427.10 | $783.50 |
| 3/26/2003 | $407.90 | $413.00 | $764.50 | $467.80 | $445.20 | $437.90 | $472.70 | $868.80 |
| 3/27/2003 | $407.90 | $413.00 | $759.60 | $467.80 | $445.20 | $425.90 | $472.70 | $883.90 |
| 3/28/2003 | $407.90 | $413.00 | $734.70 | $467.80 | $445.20 | $398.90 | $472.70 | $859.00 |
| 3/31/2003 or after | $407.90 | $413.00 | $734.70 | $467.80 | $445.20 | $427.80 | $472.70 | $870.10 |

3. Bonds purchased between 3/20/1998 and 8/26/2002 and sold on or after 3/20/2003:

| Date of Sale | 7% Senior Notes Due 6/15/2008 | 7.625% Senior Notes Due 6/1/2012 | 10.75% Senior Notes Due 10/1/2008 | 8.5% Senior Notes Due 2/1/2008 | 7.375% Senior Notes Due 10/1/2006 | 8.375% Senior Notes Due 10/1/2011 | 6.875% Senior Notes Due 6/15/2005 | 3.25% Convertible Debentures Due 4/1/2003 |
|---|---|---|---|---|---|---|---|---|
| 3/20/2003 | $560.20 | $569.70 | $791.80 | $606.60 | $566.60 | $556.60 | $597.80 | $640.30 |
| 3/21/2003 | $588.60 | $603.10 | $901.00 | $634.90 | $609.90 | $600.00 | $656.00 | $856.40 |
| 3/24/2003 | $588.60 | $587.60 | $886.60 | $627.00 | $609.90 | $582.00 | $638.10 | $822.20 |
| 3/25/2003 | $588.60 | $570.10 | $876.60 | $607.00 | $609.90 | $567.00 | $608.10 | $817.20 |
| 3/26/2003 | $588.60 | $605.70 | $936.80 | $642.50 | $609.90 | $602.60 | $653.70 | $902.40 |
| 3/27/2003 | $588.60 | $605.70 | $931.90 | $642.50 | $609.90 | $590.60 | $653.70 | $917.60 |
| 3/28/2003 | $588.60 | $605.70 | $907.00 | $642.50 | $609.90 | $563.60 | $653.70 | $892.70 |
| 3/31/2003 or after | $588.60 | $605.70 | $907.00 | $642.50 | $609.90 | $592.50 | $653.70 | $903.80 |

---

[4] HealthSouth stock was not traded on 3/19/2003.

[5] In addition, HealthSouth common stock held on September 28, 1998, September 29, 1998 and/or September 30, 1998 may be included in the SEC Plan of Allocation on or before the Court hearing on February 7, 2008. If these dates are included, the Baseline Compensation for them would be calculated using the same methodology.

[6] HealthSouth bonds were not traded on 3/19/2003.

[7] In addition, HealthSouth bonds held on September 28, 1998, September 29, 1998 and/or September 30, 1998 may be included in the SEC Plan of Allocation on or before the Court hearing on February 7, 2008. If these dates are included, the Baseline Compensation for them would be calculated using the same methodology.

**RESPONSE DEADLINE**
Postmarked By
**FEBRUARY 28, 2008**

# HEALTHSOUTH SETTLEMENT CLAIM FORM
### Please print clearly in black ink.

Official Use Only

_____
Name of Beneficial Owner (First, Middle, Last) or Entity Name if Beneficial Owner is an Entity

_____
Name of Joint Beneficial Owner, if any (First, Middle, Last)

_____
Representative Name (if different than Beneficial Owner, attach documentation for your authority to act on behalf of the Beneficial Owner)

_____
Street Address

_____
City                                        State        Zip Code        Country

_____
Email Address                           Account Number/Fund Number (not necessary for individual filers)

**Step 1 – Provide HealthSouth Common Stock Trading/Acquisition History from August 14, 1996 to March 18, 2003.**
**If no stocks traded or acquired, skip this step.**

Number of shares of HealthSouth common stock owned at the close of trading on **August 13, 1996**: _____
(If none, write "zero" or "0"; if other than zero, must be documented.)

List each individual purchase, sale or acquisition by merger of HealthSouth common stock from **August 14, 1996 to March 18, 2003,** inclusive, as follows: (a) the trade/merger date; (b) the type of transaction by letter code; (c) the number of shares traded; and (d) the total transaction amount. If you require additional space, attach extra sheets in the same format as below.

| (a)<br>Trade/Merger Date<br>(List in chronological order) | (b)<br>Transaction Type<br>Buy (B), Sell (S), Merger (M) | (c)<br>Number<br>of Shares | (d)<br>Total Transaction Amount<br>(not necessary for merger) |
|---|---|---|---|
| _____ / _____ / _____<br>Month/Day/Year | _____ | _____ | $ _____ |
| _____ / _____ / _____<br>Month/Day/Year | _____ | _____ | $ _____ |
| _____ / _____ / _____<br>Month/Day/Year | _____ | _____ | $ _____ |
| _____ / _____ / _____<br>Month/Day/Year | _____ | _____ | $ _____ |

List each **sale** that occurred from **March 19, 2003 through June 22, 2005,** inclusive, as follows: (a) the date of the sale; (b) transaction type; (c) number of shares sold; and (d) total transaction amount.

| (a)<br>Sale Date<br>(List in chronological order) | (b)<br>Transaction Type | (c)<br>Number<br>of Shares | (d)<br>Total<br>Transaction Amount |
|---|---|---|---|
| _____ / _____ / _____<br>Month/Day/Year | S | _____ | $ _____ |
| _____ / _____ / _____<br>Month/Day/Year | S | _____ | $ _____ |
| _____ / _____ / _____<br>Month/Day/Year | S | _____ | $ _____ |
| _____ / _____ / _____<br>Month/Day/Year | S | _____ | $ _____ |



||| *2-4* |||

| Step 2 – | Provide HealthSouth Bond Trading History from March 20, 1998 to June 22, 2005. |
| | If no bonds traded, skip this step. |

List each individual purchase and sale of HealthSouth Bonds[1] listed in the box below from **March 20, 1998 to March 18, 2003**, inclusive, as follows: (a) the trade date; (b) the bond issue code[1]; (c) the type of transaction; (d) the principal amount (face value or par value); and (e) the total amount paid (including commissions, taxes and fees) or the total amount received (net of commissions, taxes and fees). If you require additional space, attach extra sheets in the same format as below.

| (a) Trade Date (List in chronological order) | (b) Bond Issue Traded[1] (See code list below) | (c) Transaction Type Buy (B) Sell (S) | (d) Principal Amount (Face value or par value) | (e) Total Transaction Amount |
|---|---|---|---|---|
| _____ / _____ / _____  Month/Day/Year | _____ | _____ | $_____ | $_____ |
| _____ / _____ / _____  Month/Day/Year | _____ | _____ | $_____ | $_____ |
| _____ / _____ / _____  Month/Day/Year | _____ | _____ | $_____ | $_____ |
| _____ / _____ / _____  Month/Day/Year | _____ | _____ | $_____ | $_____ |
| _____ / _____ / _____  Month/Day/Year | _____ | _____ | $_____ | $_____ |

List each **sale** that occurred from **March 19, 2003 through June 22, 2005,** inclusive, as follows:

| (a) Sale Date (List in chronological order) | (b) Bond Issue Traded[1] (See code list below) | (c) Transaction Type | (d) Principal Amount (Face value or par value) | (e) Total Transaction Amount (net of commissions, taxes and fees) |
|---|---|---|---|---|
| _____ / _____ / _____  Month/Day/Year | _____ | S | $_____ | $_____ |
| _____ / _____ / _____  Month/Day/Year | _____ | S | $_____ | $_____ |
| _____ / _____ / _____  Month/Day/Year | _____ | S | $_____ | $_____ |
| _____ / _____ / _____  Month/Day/Year | _____ | S | $_____ | $_____ |
| _____ / _____ / _____  Month/Day/Year | _____ | S | $_____ | $_____ |

---

[1]   The HealthSouth Bonds consist of eight debt instruments. Each was first issued pursuant to Rule 144A of the Securities Act of 1933, and was later exchanged for registered debt with the same terms. Those eight debt instruments are as follows:

| Bond Issue Code | Bond Issue Description | 144A Issuance Date | 144A CUSIP Number | Registered CUSIP Number |
|---|---|---|---|---|
| A | 3 1/4% Convert. Sub. Debentures due 4/1/03 | 03/20/1998 | 421924AD3 | 421924AF8 |
| B | 6 7/8% Senior Notes due 6/15/05 | 06/22/1998 | 421924AG6 | 421924AJ0 |
| C | 7% Senior Notes due 6/15/08 | 06/22/1998 | 421924AK7 | 421924AM3 |
| D | 10 3/4% Senior Sub. Notes due 10/1/08 | 09/25/2000 | 421924AN1 | 421924AP6 |
| E | 8 1/2% Senior Notes due 2/1/08 | 02/01/2001 | 421924AQ4 | 421924AR2 |
| F | 8 3/8% Senior Notes due 10/1/11 | 09/28/2001 | 421924AV3 | 421924AX9 |
| G | 7 3/8% Senior Notes due 10/1/06 | 09/28/2001 | 421924AS0 | 421924AU5 |
| H | 7 5/8% Senior Notes due 6/1/12 | 05/22/2002 | 421924AY7 | 421924AZ4 |

**Step 3 – Provide HealthSouth Call and Put Option Contract Trading History.  If no option contracts traded, skip this step.**

*BEGINNING HOLDINGS:*

For calls or puts list (a) the number of contracts purchased; (b) the expiration date (month/year); and (c) the exercise price that you held at the close of trading on **August 13, 1996**:

| Type of Contract | (a) Number of Contracts | (b) Expiration Date | (c) Exercise Price |
|---|---|---|---|
| Calls | _____ | _____ / _____ Month/Year | $_____ |
| Puts | _____ | _____ / _____ Month/Year | $_____ |

*PURCHASES, SALES AND ACQUISITIONS:*

List each individual transaction of HealthSouth call and put options from **August 14, 1996 to June 22, 2005**, inclusive, as follows: (a) the trade/merger date; (b) the type of transaction by letter code; (c) call or put; (d) the number of contracts; (e) the price per contract; (f) the date of expiration; (g) the exercise price; (h) the transaction amount; and (i) an indication if the option was assigned, was exercised or expired.  If you require additional space, attach extra sheets in the same format as below.

| (a) Trade/Merger Date | (b) Transaction Type: Buy (B), Sell (S), Merger (M) | (c) Call (C) Or Put (P) | (d) Number of Contracts | (e) Price Per Contract (not required for merger) | (f) Expiration month/year (not required for merger) | (g) Exercise Price | (h) Transaction Amount (not required for merger) | (i) Assigned, Exercised, Expired OR Closed Out |
|---|---|---|---|---|---|---|---|---|
| ___/___/___ Month/Day/Year | _____ | _____ | _____ | $_____ | ___/___/___ Month/Day/Year | $_____ | $_____ | _____ |
| ___/___/___ Month/Day/Year | _____ | _____ | _____ | $_____ | ___/___/___ Month/Day/Year | $_____ | $_____ | _____ |
| ___/___/___ Month/Day/Year | _____ | _____ | _____ | $_____ | ___/___/___ Month/Day/Year | $_____ | $_____ | _____ |
| ___/___/___ Month/Day/Year | _____ | _____ | _____ | $_____ | ___/___/___ Month/Day/Year | $_____ | $_____ | _____ |

**Step 4 – Please submit supporting documentation for your claim.**

You must submit documentation for your trading history.  Acceptable documentation may include: (a) monthly stock brokerage or other investment account statements; (b) trade confirmation slips; (c) a signed letter from your broker on firm letterhead verifying the information you are providing; (d) a Deposit or Escrow Receipt showing your holdings; or (e) other equivalent proof of your transactions.  If you have questions please call 1-888-952-9108.

**Step 5 – Please review the release for the class actions and sign below.**

1.  I hereby acknowledge full and complete satisfaction of, and do hereby fully, finally and forever settle, release, relinquish and discharge, all of the Released Claims against each and all of the Settling Defendants and each and all of their "Related Parties," defined as each of a Settling Defendant's immediate family members, heirs, executors, administrators, successors, assigns, present and former employees, officers, directors, attorneys, legal representatives, and agents of each of them, and any person or entity which is or was related to or affiliated with any Settling Defendant or in which any Settling Defendant has or had a controlling interest and the present and former parents, subsidiaries, divisions, affiliates, predecessors, successors, employees, officers, directors, attorneys, assigns, and agents of each of them.  The Related Parties shall also include the Settling Insurers.  Notwithstanding anything in this paragraph, Related Parties shall not include any Non-Settling Defendant or any Non-Settling Insurer.

2.  "Released Claims" means all claims (including "Unknown Claims" as defined below), and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, whether brought directly or derivatively, that Lead Plaintiffs or any member of the Bondholder Class or Stockholder Class in the Class actions asserted in the Complaint, or could have asserted as a result of purchases, acquisitions, sales, or exercises made during the Bondholder Class Period or the Stockholder Class Period in securities issued by HealthSouth (including, without limitation, all claims arising out of or relating to any disclosures, public filings,





registration statements or other statements by HealthSouth or any Defendant in the Litigation), based upon or arising out of any facts, allegations or claims set forth in the Complaint. In addition, with respect to the Settling Insurers and the present and former parents, subsidiaries, divisions, affiliates, predecessors, successors, employees, officers, directors, attorneys, assigns, and agents of each of them, Released Claims means all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, whether brought directly or derivatively, that are based upon, in consequence of, arise out of or relate in any way, whether in whole or in part, to (i) the Insurance Policies, (ii) the Coverage Litigation, (iii) the class actions, (iv) the litigation, defense, and settlement of the Coverage Litigation and the class actions, and/or (v) any of the facts, circumstances, and situations underlying or alleged in the Coverage Litigation and the class actions.

3.  "Unknown Claims" means all claims, demands, rights, liabilities, and causes of action of every nature and description which the Lead Plaintiffs or any Class Member do not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Persons, or might have affected his, her or its decision not to object to this settlement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Lead Plaintiffs shall expressly waive, and each of the Class Members shall be deemed to have waived, and by operation of the Judgment shall have waived, the provisions, rights and benefits of California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Lead Plaintiffs shall expressly waive and each of the Class Members shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code §1542. The Lead Plaintiffs and Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but the Lead Plaintiffs shall expressly fully, finally and forever settle and release, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Lead Plaintiffs acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

4.  I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

5.  I (We) hereby warrant and represent to the best of my (our) knowledge that I (we) have included information about all of my (our) transactions in HealthSouth common stock, options, bonds, notes and debentures that occurred during the Class Period as well as the number and type of HealthSouth stock options, held by me (us) at the close of trading on April 23, 1997

I declare under penalty of perjury under the laws of the United States of America that the foregoing information supplied by the undersigned is true and correct.

_____/_____/_____          _____/_____/_____
Month/Day/Year                                            Month/Day/Year

_____          _____
Signature of Claimant                                    Signature of Joint Claimant (if any)

_____          _____
(Type or Print Your Name Here)                           (Type or Print Your Name Here)

_____          _____
Last 4 digits of your SSN or EIN                         Last 4 digits of your SSN or EIN

_____
(Capacity of person(s) signing, e.g. beneficial purchaser(s), executor, administrator, trustee, etc.)

**Please submit your Claim Form and the required documentation POSTMARKED NO LATER THAN FEBRUARY 28, 2008 TO:  HealthSouth Settlement Claims Administrator, c/o Rust Consulting, P.O. Box 1906, Faribault, MN 55021-7161.**

EXHIBIT 5

COMPASS LEXECON



**Jonathan M. Orszag**
*Senior Managing Director*

202 589 3452 DIRECT
jorszag@compasslexecon.com

April 6, 2010

Edward A. Grossmann, Esq.                    Joy A. Bull, Esq.
Rochelle Feder Hansen, Esq.                  Coughlin Stoia Geller Rudman & Robbins LLP
Bernstein Litowitz Berger & Grossmann LLP    655 West Broadway, Suite 1900
1285 Avenue of the Americas                  San Diego, CA 92101
New York, NY 10019


James W. Johnson, Esq.                        Professor Francis McGovern
Labaton Sucharow LLP                          Duke University Law School
140 Broadway                                  Box 90362
New York, NY 10005                            Durham, North Carolina 27708-0362


Dear Mr. Grossmann, Ms. Hansen, Mr. Johnson, Ms. Bull, and Professor McGovern:

The purpose of this letter is to detail the steps that Compass Lexecon undertook to *(a)* review Rust Consulting's ("Rust") calculations of loss amounts ("Loss Amounts") as determined per the methodology outlined in the Plans of Allocation developed for the proceeds of the settlements of both the Securities and Exchange Commission ("SEC") and Class Actions HealthSouth securities litigations; and *(b)* to confirm the accuracy of the work performed by Rust as to its calculations of Loss Amounts resulting from the methodology that Rust applied.  As a Senior Managing Director of Compass Lexecon, I am authorized to speak for and bind the firm.

Professor McGovern requested that Compass Lexecon assist him and the SEC staff in developing the SEC's Plan of Allocation.  Our team, therefore, has a thorough understanding of the HealthSouth Plans of Allocation and the methodology adopted to allocate funds to Injured Customers and Class Members, as defined in the Plans of Allocation and clarified in the "Calculations Assumptions for the Class Plan" memorandum dated August 18, 2009 ("Rules Memo").

In order to evaluate Rust's calculations of Loss Amounts pursuant to the Plans of Allocation, Compass Lexecon independently developed and programmed an algorithm to calculate the Loss Amounts as defined in the Plans of Allocation and clarified in the Rule Memo,

for each claimant for their stock, bond, option and merger transactions, under both the SEC and the Class Actions Plans of Allocation. Our team then applied our calculation algorithm to the dataset of claims provided to us by Rust which constituted all claims submitted in connection with the SEC and Class Action Settlements that contained any transaction information during any of the relevant time periods that was supported by documentation. Compass Lexecon worked closely with Rust and experts for the Classes to resolve any calculation and data interpretation issues that arose, as discussed in more detail below.

The protocol we used to review Rust's calculation of Loss Amounts was consistent with our past practice. As a general matter, the review was an iterative process, whereby we received transaction datasets of stocks, bonds, options or mergers on a rolling basis from Rust. These datasets typically evolved as claims, and cures for deficient claims, were received; processed; and then added to each respective dataset by Rust. After Rust checked a dataset and corrected any issues it identified, we received these transaction datasets and then took the following steps:

First, we conducted a data integrity check of all transactions received in the dataset; we developed this algorithm during the course of our work on this project. For example, some issues we identified with this first step include: *(i)* stock and bond prices that appeared to be too high or too low relative to the market price for a particular day; *(ii)* missing values in the various variable fields; *(iii)* incorrect prices for merger transactions; and *(iv)* transactions that have been reported on days when the market was closed for trading.

Second, after the data issues were identified, flagged and adjusted for, we ran our algorithms to calculate the Loss Amount, as defined in the Plans of Allocation and clarified in the Rules Memo, for each claimant. We then compared our calculated results with the results calculated by Rust, and we identified any discrepancies between the two calculations.

Third, if there were any discrepancies between our respective payment calculations, we compiled a comprehensive report that showed all the data and calculation issues, by claimant, that were identified in the dataset received, and we sent that report to Rust. Following our normal protocol, we then discussed with Rust via conference call resolutions for the issues identified in our report, and any resolutions were independently incorporated by Rust and Compass Lexecon into their respective payment calculation algorithms.

Fourth, Rust corrected the data issues and made the necessary changes to its loss calculation algorithm. Rust subsequently provided us with updated payment calculations and an updated set of data files (or a dataset), which may have included additional claims Rust received since the previous dataset was sent to us.

These steps of identifying remaining data issues and discrepancies were then repeated until there were no data integrity issues and the Loss Amount calculations of Rust and Compass Lexecon were consistent with the rules set forth in the Plans of Allocation and clarified in the Rules Memo and matched for all claims.

Compass Lexecon confirms that Rust applied the methodology specified in the SEC and the Class Action Plans of Allocation and clarified in the Rules Memo and produced calculations of Loss Amounts, as provided in and based on the claims transaction data received from Rust, that are accurate for all claims. Compass Lexecon approves the final Loss Amounts listed in the file titled "PRJ58711_20100211.txt" that was prepared by Rust for submission to the Court and provided to Compass Lexecon on February 11, 2010. Compass Lexecon did not independently compile or verify, nor does it warrant the accuracy of the underlying transaction data received from Rust.

Although it is not our practice to issue letters such as this prior to receipt to payment in full, we are issuing this letter as an accommodation to expedite payments to claimants. In respect of our good faith efforts to complete our work without payment for our services, we expect that payment to us will be arranged expeditiously.

If you have any questions regarding our review process, please feel free to contact me at the number above or Yair Eilat at 510.285.1208.

Sincerely,

Jonathan M. Orszag
Senior Managing Director
Compass Lexecon, LLC

EXHIBIT 6

FUND ACCOUNTING

**Funds Available for Distribution**
**HealthSouth SEC CV-03-J-0615-S**
**SEC v HealthSouth Corp. QSF**
**Report Dated 03/31/2010**

| FUND ACCOUNTING: | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance: | - | | |
| | *Increases in Fund Balance:* | | | |
| Line 2 | Contributions/Deposits: | | | |
| Line 2a | Contributions: | | | |
| | October 17, 2005 | 12,500,100.00 | | |
| | April 17, 2006 | 12,500,000.00 | | |
| | October 17, 2006 | 25,000.00 | | |
| | October 19, 2006 | 24,975,000.00 | | |
| | April 16, 2007 | 25,000,000.00 | | |
| | October 16, 2007 | 25,000,000.00 | | |
| | April 22, 2008 | 1,500,000.00 | | |
| | April 23, 2009 | 2,000,000.00 | | |
| Line 2b | Deposits | | | |
| | **Total Contributions/Deposits** | | 103,500,100.00 | |
| Line 3 | Investment/Interest Earnings | | | |
| | Earned and deposited thru 02/28/2010 | 5,268,502.69 | | |
| | Estimated interest earned thru 03/31/2010 | 33,000.00 | | |
| | **Total Contributions/Deposits** | | 5,301,502.69 | |
| Line 4 | Gain on Investment Disposition | | | |
| | **Total Funds Available** (Lines 1–4): | | | **108,801,602.69** |
| | *Decreases in Fund Balance:* | | | |
| Line 5 | Disbursements to Investors | | | |
| Line 6 | Disbursements for Plan Administration Expenses Paid by the Fund: | | | |
| Line 7 | Disbursements to Court/Other: | | | |
| Line 7a | Investment Expenses CRIS Fees Accrued | 530,150.27 | | |
| Line 7b | Federal Tax: | | | |
| | Paid thru 12/31/2009 | 1,610,926.73 | | |
| | Estimated thru 03/31/2010 | 45,000.00 | | |
| | **Total Disbursements to Court/Other:** | | 2,186,077.00 | |
| Line 8 | Alabama (AL) State Tax Payments | | | |
| | Paid thru 12/31/2009 | 142,979.00 | | |
| | Estimated thru 03/31/2010 | 24,500.00 | | |
| | **Total Alabama (AL) State Tax Payments** | | 167,479.00 | |
| Line 9 | Loss on Investment Disposition | | | |
| | **Total Funds Disbursed** (Lines 5– 9): | | | **2,353,556.00** |
| **Line 10:** | Ending Balance (As of 03/31/2010): | | | **106,448,046.69** |
| Line 11 | Ending Balance of Fund – Net Assets: | | | |
| Line 11a | Cash & Cash Equivalents | - | | |
| Line 11b | Investments | 106,448,046.69 | | |
| Line 11c | Uncleared Funds Disbursed | | | |
| | **Total Ending Balance of Fund – Net Assets** | | | **106,448,046.69** |