FILED

2010 Jun-30  PM 12:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>      **Plaintiff,**<br><br>   **v.**<br><br>**HealthSouth Corporation**<br><br>      **Defendant.** | **CV-03-J-0615-S** |

## NOTICE OF CLARIFICATION OF PLAN OF ALLOCATION FOR FUNDS IN SEC ACTION AND PLAN OF ALLOCATION

Francis E. McGovern, the Court-appointed Distribution Agent for the Securities and Exchange Commission v. HealthSouth Qualified Settlement Fund ("Fund"), hereby submits a clarification with regard to the Distribution Agent's Plan of Allocation, as currently described, along with an incorporation of all clarifications into the Plan of Allocation.

The Plan of Allocation for the Securities and Exchange Commission HealthSouth Securities Settlement was filed on October 22, 2007, in accordance with the Joint Order Approving Form and Manner of Notice dated October 3, 2007 (see "Declaration of Joy Ann Bull Providing The Final Notice Documents," Exhibit 4, Appendix II).   Clarifications of the Plan of

Allocation for Funds in SEC Action were filed on February 5, 2008, July 24, 2009, and May 14, 2010.  Attached hereto is the Plan of Allocation incorporating all clarifications including those herein.

The Order Appointing A Distribution Agent And Establishing A Disgorgement fund provides:

> The Distribution Agent shall coordinate his efforts with other settlement funds related to the cause of action underlying this case.[1]

> The Distribution Agent shall propose a single plan of allocation, to avoid duplicative costs and/or confusion to the victims.[2]

Pursuant to this Order, the Distribution Agent will coordinate the distribution process by ensuring that the distribution process adopts consistent procedures with In re HealthSouth Corporation Securities Litigation, Master File no. CV-03-BE-1500-S, including, but not limited to, the issuing of checks, correspondence, check cashing periods, payment re-issuances, inquiries, disputed payment amounts, and other distribution related matters.  In this connection the period of time for cashing of checks will be 120 days and any claimant who disputes the calculation of his, her or its loss amount and/or his, her or its distribution check, must submit such challenge in writing, postmarked no later than sixty (60) days after the date the check was issued.

The Distribution Agent respectfully requests that the Court incorporate this clarification into the Plan of Allocation as provided in the attached Plan of Allocation.

Dated:  June 30, 2010

Respectfully submitted,

---

[1] Order Appointing A Distribution Agent And Establishing A Disgorgement Fund, page 2.
[2] Order Appointing A Distribution Agent And Establishing A Disgorgement Fund, page 3.

s/ Francis E. McGovern
Francis E. McGovern
Distribution Agent
401 West Alabama
Houston, TX 77006
Tel: 1-919-613-7095
E-mail: McGovern@ law.duke.edu

## CERTIFICATE OF SERVICE

   I hereby certify that on __June 30, 2010__, I electronically filed the foregoing Distribution Agent's Motion to File Injured Customer List Under Seal by using the ECF system which will send a notice of electronic filing to the following known Filing User:  R. Martin Adams, Edward E. Angwin, Gary H. Baise, William P. Hicks, Arthur W. Leach, Alan M. Lieberman, Madison Loomis, Joseph B. Mays, Jr., Francis E. McGovern, Leslie V. Moore, James W. Parkman, J. Marbury Ranier, Alex Rue, David G. Russel, Jack W. Selden, H. Michael Semler, Kile T. Turner, John D. Worland, Jr.

   I further certify that I served the foregoing document and notice of electronic filing by first-class mail to the following non-ECF participants:

Charles F. Walker, Esq.
Skadden, Arps, Slate, Meagher & Flom
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111

G. Douglas Jones, Esq.
2001 Park Place North, Suite 1000
Birmingham, AL 35203

Robert R. Riley, Jr., Esq.
Riley & Jackson, P.C.
1744 Oxmoor Road
Birmingham, AL 35209

Jonah H. Goldstein, Esq.
Robbins Geller Rudman & Dowd, LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

James W. Johnson, Esq.
Labaton Sucharow LLP
140 Broadway, 34th Floor

-4-

New York, NY 10005

Rochelle Hansen, Esq.
Bernstein Litowitz Berger & Grossman
1285 Avenue of the Americas, 38th Floor
New York, NY 10019

Robert T. Cunningham, Jr., Esq.
Cunningham Bounds Crowder Brown & Breedlove
1601 Dauphin Street
Mobile, AL 36604

David J. Guin, Esq.
Donaldson & Guin, LLC
The Financial Center
505 20th Street, North, Suite 1000
Birmingham, AL 35203

Charles W. Gilligan, Esq.
O'Donohue & O'Donohue
4748 Wisconsin Avenue, N.W.
Washington, D.C. 20016

Michael J. Del Giudice, Esq.
1219 Virginia Street, East, Suite 100
Charleston, WV 25301

**Plan of Allocation for the SEC HealthSouth Securities Settlement**

## INTRODUCTION

This distribution plan ("Plan") concerns the $100 million Fair Fund established pursuant to the U.S. Securities and Exchange Commission's ("Commission") settlement with HealthSouth Corporation ("HealthSouth") regarding allegations about HealthSouth's accounting practices ("SEC Settlement").

In its complaint, the Commission alleged that HealthSouth, acting through some of its employees, had violated federal securities law.  The investigation related to the falsification of HealthSouth's financial statements; false and misleading disclosures in HealthSouth's Commission filings; public statements during the time period 1996 through 2003; and violations of the Foreign Corrupt Practices Act.  The $100 million Fair Fund is to be distributed among investors in HealthSouth who suffered losses as a result of company disclosures on September 30, 1998, August 27, 2002 and/or March 19, 2003 ("Disclosure Dates").

On June 22, 2005, the United States District Court for the Northern District of Alabama ordered that HealthSouth was liable for disgorgement of $100 and a civil penalty in the amount of $100 million.  Pursuant to that order and Section 308(a) of the Sarbanes-Oxley Act of 2002, the Commission established a Fair Fund with respect to the civil penalty described in the SEC Settlement.  Francis McGovern was appointed to act as Fund Administrator of the Fair Fund.

Pursuant to the SEC Settlement, the Fund Administrator proposed to draw up a Plan to be approved by the Court. The Plan included provisions disbursing the Fair Fund to reimburse injured customers for their loss.

## DISTRIBUTION PLAN

Based on the data supplied to the Fund Administrator and the requirements of the SEC Settlement, the Plan is divided into three separate phases.  The initial phase of the Plan is to identify the customers who were injured as a result of HealthSouth's violations, as previously determined by the Commission ("Injured Customers").  The second phase is to calculate each Injured Customer's compensation ("Distribution Amount").  The third and final phase is to distribute the Distribution Fund to the Injured Customers.  The Plan for each phase is outlined below.

### Identification of Injured Customers

Injured Customers are those shareholders and bondholders who purchased, or otherwise acquired, HealthSouth securities on or after August 14, 1996 and held these securities on one or more of the Disclosure Dates. Injured Customers do not include any persons or entities (1) named as Defendants in any case filed by the Securities and Exchange Commission or the United States Attorney general against current or former officers directors, or employees of HealthSouth Corporation; (2) sued as Defendants in the consolidated class actions in U.S. District Court, Northern District of Alabama, titled *In re HealthSouth Corporation Securities Litigation*, Case No. CV-03-BE-1500-S; (3) members of the immediate family of any such Defendant; (4) the

directors, officers, subsidiaries and affiliates of HealthSouth; and (5) any person or entity in which any Defendant has a controlling interest, and their legal representatives, affiliates, heirs, successors or assigns.

The identification process will involve multiple approaches including: (a) obtaining shareholder information from the Defendant or transfer agent(s) which contain record holders' and beneficial owners' names, addresses, and share positions on the Disclosure Dates; (b) obtaining names, addresses and transaction data from broker/dealers for the August 14, 1996 through June 22, 2005 time period (the "relevant dates"); and (c) public notice.  A claim form will be sent to each potentially Injured Customer identified through Defendant, transfer agent and broker/dealer records, and to any person or entity who requests a claim form.

All nominees and brokers that hold or held HealthSouth securities purchased on or after August 14, 1996 and held those securities on a Disclosure Date as nominees for beneficial owners, shall promptly provide the Fund Administrator with: (1) the names and addresses of the identified beneficial owners, and for each such beneficial owner; and (2) all transactional data of purchases, acquisition, sales, transfers, exchanges and holdings of HealthSouth securities for the relevant dates.  HealthSouth shall reimburse reasonable administration costs incurred in connection with the provision of such data, pursuant to the terms of the Court's Final Judgment and Order.

Calculation of Injured Customers' Distribution Amounts

Injured Customers are eligible for compensation up to a maximum of their actual losses. An Injured Customer's Distribution Amount is based on the relative changes in the prices of the securities following the Disclosure Dates.[1]  The relative change is determined by adjusting the change in the price of the HealthSouth securities following the Disclosure Dates by accounting for the overall market return.  Such a methodology ensures that the return on HealthSouth securities captures what cannot be explained by the broader market return.[2]  This approach gives the market-adjusted price changes, which constitute the *baseline compensation* per unit of security held.  Appendix 1 provides the *baseline compensation* based on the period the security was held. Appendix 2 describes the methodology used for calculating these figures.

An Injured Customer's eligibility for compensation is capped by the Injured Customer's actual loss on a security.  That is, the maximum eligible loss on a unit held on a Disclosure Date is the difference between the purchase price and the sale price of that unit.[3]  Any stocks held as of the close of trading on March 20, 2003 will be treated as liquidated on March 20, 2003.  Similarly, any bonds held as of the close of trading on March 31, 2003 will be treated as liquidated on

---

[1] Specifically, compensation depends on the relative change in the security price during the a*djustment period*. The *adjustment period* is the time it takes the security price to return to a period (one day) of "normal" returns following a disclosure, and it is determined using statistical techniques: this period begins on the Disclosure Date and ends on the last consecutive day in which the daily return was statistically different from the market return.  An investor who sold the security during the a*djustment period* is only entitled to compensation up to the relative change in the price of the security between the Disclosure Date and the day of the sale.

[2] The S&P 500 index is used as the benchmark for the HealthSouth stock and the Vanguard Total Bond Index is used as the benchmark for the HealthSouth bonds.

[3] The purchase price and the sale price are determined by matching buys and sells ("round trips") using a FIFO (First In First Out) principle.  Profits on one unit are not netted against losses incurred on other units by the same investor.

March 31, 2003.  Actual losses on securities held beyond the order date of June 22, 2005 are calculated using the closing prices of these securities on that date.

No Distribution Amount less than $10.00 will be paid.  The Fund Administrator may aggregate accounts held by any Injured Customer for purposes of meeting the $10.00 floor on distributions.

If the funds are insufficient to compensate the Injured Customers for their maximum eligible losses, a common proportional discount factor will be applied to the baseline compensation to ensure that there are sufficient funds available to pay Injured Customers.

The distribution fund plan allocates $1 million to compensate Injured Customers who suffered losses on derivatives of HealthSouth securities.  These Injured Customers are eligible for compensation up to their actual losses provided they held Call or Put Options on HealthSouth common stock that were purchased between August 14, 1996 and March 18, 2003, and were owned at the end of one of the following dates: September 29, 1998, August 26, 2002 and/or March 18, 2003.  If the total actual losses on derivatives of HealthSouth securities exceed $1 million, a common proportional discount factor will be applied to the Injured Customers' full losses.

## Distributions to Injured Customers

To the extent reasonable and feasible, and where consistent with the provisions of this Plan, the notice, claims procedure and distribution of compensation to Injured Customers shall be coordinated with a claims process and distribution in the partial settlement of *In re HealthSouth Corporation Securities Litigation*, Case No. CV-03-BE-1500-S (N.D. Ala.), including, without limitation: obtaining transaction data from brokers and nominees; preparation and distribution of a single claim form; a uniform claimant appeal process; and distribution of a single payment to eligible claimants.

The Fund Administrator is recommending that an initial distribution be made in this matter, followed by distributions on a rolling basis as settlements further occur. Each distribution list will be submitted to the Court for approval, with a copy to the Commission, once a significant number of Injured Customers are identified.

Before a distribution is made to Injured Customers, the Fund Administrator will submit a report to the Court seeking approval with a copy to the Commission. This report will include the name of each Injured Customer along with their Distribution Amount. Upon approval, the database of approved Injured Customers will be submitted to the U.S. Postal Service's National Change of Address vendor to standardize the addresses for postal rate discounts and to update mailing addresses. The updated database of Injured Customers and Distribution Amounts will then be sent to the agent appointed by the Fund Administrator to disburse the Fair Fund for printing and mailing of distribution payments.

Each distribution will be funded from an escrow fund by a transfer of funds into a distribution checking account held by an escrow agent appointed by the Fund Administrator. Under the Internal Revenue Code, the Fund Administrator is required to withhold applicable taxes from payments of the Distribution Amount, unless the Fund Administrator has received adequate tax

documentation from, or on behalf of, the Injured Customer prior to making such payment, and, further, if the Fund Administrator is required to notify the payee of such withholding, if any.

A distribution payment will be sent to each approved Injured Customer with an attached cover letter. Each distribution payment will clearly indicate that checks must be negotiated within 120 days of issuance.

Distribution payments returned to the Fund Administrator as undeliverable will be sorted into two categories and the Injured Customer's data file will be appropriately marked in the Fund Administrator's main database. If the Post Office provides a forwarding address, the Fund Administrator will change the main database and re-mail the distribution payment. If no forwarding address is provided, the name and old address will be sent to a credit bureau for updated addresses. Any updated addresses received will be used to re-mail the distribution payments. Any payments re-mailed will include a cover letter indicating the payee has 120 days from the date of the letter to negotiate the payment.

The Fund Administrator will continue to work to identify Injured Customers. When the Fund Administrator determines that efforts to identify the Injured Customers have been exhausted, a final report will be submitted by the Fund Administrator to the Court with a copy to the Commission listing its recommendations to finalize and close out these matters. The final distribution will occur within 30 days of the last Injured Customer being identified or the Court approving the finalization and closing of these matters. Tthe Fund Administrator proposes the Fair Fund termination after the following have occurred: (1) the Final Accounting by the Fund Administrator has been submitted and approved by the Court, (2) all taxes and fees have been paid, and (3) all remaining funds or any residual have been transferred to the U.S. Treasury.

<u>Verification Procedure for Injured Customers</u>

By distribution, the Fund Administrator will establish a procedure whereby any person who (a) has not received a Distribution Amount and who wishes to determine whether they have been identified as an Injured Customer, or (b) has received a Distribution Amount but wishes to ascertain whether such Distribution Amount is accurate, may so inquire by submitting in writing, postmarked no later than sixty (60) days after the date the check was issued, certain identifying information (such as their last name or, in the case of an entity, the legal name of such entity, and the last four digits of the social security number or tax identification number, and any information that such person believes should be considered in determining the Distribution Amount available to such person). The Fund Administrator will consider the information and then respond electronically or in writing to the person or entity making the inquiry informing them, with respect to (a) above, whether or not they are an Injured Customer, and if they are an Injured Customer, providing information as to what procedures the Injured Customer must follow (such as providing the Fund Administrator with their full name, address, and proof of identity) to receive a Distribution Amount, and, with respect to (b) above, whether the Distribution Amount paid was the proper amount, and, if not, then including a distribution payment for the shortfall between the Distribution Amount paid and the re-calculated Distribution Amount.

<u>Other Matters</u>

In cases where the Injured Customer is unable to endorse the distribution payment as written and the Injured Customer or their lawful representative requests the re-issuance of a distribution payment, supporting documentation must be provided to the Fund Administrator to support the requested change. The data submitted will be reviewed to determine the authenticity and propriety of the change request. Any properly documented change request that is accepted will result in the payment being re-issued. No payment will be re-issued unless the documentation submitted is accepted as proper.

The Fund Administrator shall file on a timely basis all required federal, state and local tax returns and estimated payments with respect to the Fair Fund. Copies of all filings will be submitted to the Commission's Office of Financial Management and to the Associate Regional Director of the Southeast Regional Office. Tax payments, if any, shall be made in accordance with the provisions of the Court's orders governing such payments.

The Fund Administrator shall file an accounting of the Fair Fund with the Court, with a copy to counsel for the Commission.

HealthSouth shall, pursuant to Section IV of the Final Judgment and Order, pay all reasonable expenses of distribution within thirty days after receipt of an invoice for such services from the Fund Administrator or any agent appointed by the Fund Administrator to conduct the distribution.

**Appendix 1: Baseline Compensation for HealthSouth Securities**[4]

HealthSouth Stock

1.  Stocks purchased between 8/14/1996 and 9/29/1998:
    a.  $3.68 if sold on or after 9/30/1998 and on or before 8/26/2002
    b.  $8.77 if sold on 8/27/2002
    c.  $10.31 if sold on 8/28/2002
    d.  $9.69 if sold on 8/29/2002
    e.  $9.99 if sold on 8/30/2002
    f.  $9.69 if sold on or after 9/3/2002 and on or before 3/18/2003
    g.  $13.49 if sold on or after 3/20/2003

2.  Stocks purchased between 9/30/1998 and 8/26/2002:
    a.  $5.09 if sold on 8/27/2002
    b.  $6.63 if sold on 8/28/2002
    c.  $6.01 if sold on 8/29/2002
    d.  $6.31 if sold on 8/30/2002
    e.  $6.01 if sold on or after 9/3/2002 and on or before 3/18/2003
    f.  $9.81 if sold on or after 3/20/2003

3.  Stocks purchased on or after 8/27/2002 and on or before 3/18/2003 and sold on or after 3/20/2003: $3.80.

---

[4] HealthSouth stock was not traded on 3/19/2003.

HealthSouth Bonds

Baseline compensation per bond with a par value of $1,000:

1. Bonds purchased between 3/20/1998 and 8/26/2002 and sold on or before 3/18/2003:

| Date of Sale | 7% Senior Notes Due 6/15/08 | 7.625% Senior Notes Due 6/1/12 | 10.75% Senior Notes Due 10/1/08 | 8.5% Senior Notes Due 2/1/08 | 7.375% Senior Notes Due 10/1/06 | 8.375% Senior Notes Due 10/1/11 | 6.875% Senior Notes Due 6/15/05 | 3.25% Convertible Debentures Due 4/1/03 |
|---|---|---|---|---|---|---|---|---|
| 8/27/2002 | $117.70 | $122.70 | $95.00 | $132.60 | $112.70 | $137.60 | $114.60 | $15.20 |
| 8/28/2002 | $159.70 | $164.10 | $172.30 | $174.70 | $164.70 | $164.70 | $151.40 | $33.70 |
| 8/29/2002 to 3/18/2003 | $180.70 | $192.70 | $172.30 | $174.70 | $164.70 | $164.70 | $181.00 | $33.70 |

2. Bonds purchased between 8/27/2002 and 3/18/2003 and sold on or after 3/20/2003:

| Date of Sale | 7% Senior Notes Due 6/15/08 | 7.625% Senior Notes Due 6/1/12 | 10.75% Senior Notes Due 10/1/08 | 8.5% Senior Notes Due 2/1/08 | 7.375% Senior Notes Due 10/1/06 | 8.375% Senior Notes Due 10/1/11 | 6.875% Senior Notes Due 6/15/05 | 3.25% Convertible Debentures Due 4/1/03 |
|---|---|---|---|---|---|---|---|---|
| 3/20/2003 | $379.50 | $377.10 | $619.50 | $431.90 | $401.90 | $392.00 | $416.80 | $606.60 |
| 3/21/2003 | $407.90 | $410.40 | $728.70 | $460.20 | $445.20 | $435.30 | $475.00 | $822.80 |
| 3/24/2003 | $407.90 | $395.00 | $714.30 | $452.30 | $445.20 | $417.30 | $457.10 | $788.50 |
| 3/25/2003 | $407.90 | $377.50 | $704.30 | $432.30 | $445.20 | $402.30 | $427.10 | $783.50 |
| 3/26/2003 | $407.90 | $413.00 | $764.50 | $467.80 | $445.20 | $437.90 | $472.70 | $868.80 |
| 3/27/2003 | $407.90 | $413.00 | $759.60 | $467.80 | $445.20 | $425.90 | $472.70 | $883.90 |
| 3/28/2003 | $407.90 | $413.00 | $734.70 | $467.80 | $445.20 | $398.90 | $472.70 | $859.00 |
| 3/31/2003 or after | $407.90 | $413.00 | $734.70 | $467.80 | $445.20 | $427.80 | $472.70 | $870.10 |

3.  Bonds purchased between 3/20/1998 and 8/26/2002 and sold on or after 3/20/2003:

| Date of Sale | 7% Senior Notes Due 6/15/08 | 7.625% Senior Notes Due 6/1/12 | 10.75% Senior Notes Due 10/1/08 | 8.5% Senior Notes Due 2/1/08 | 7.375% Senior Notes Due 10/1/06 | 8.375% Senior Notes Due 10/1/11 | 6.875% Senior Notes Due 6/15/05 | 3.25% Convertible Debentures Due 4/1/03 |
|---|---|---|---|---|---|---|---|---|
| 3/20/2003 | $560.20 | $569.70 | $791.80 | $606.60 | $566.60 | $556.60 | $597.80 | $640.30 |
| 3/21/2003 | $588.60 | $603.10 | $901.00 | $634.90 | $609.90 | $600.00 | $656.00 | $856.40 |
| 3/24/2003 | $588.60 | $587.60 | $886.60 | $627.00 | $609.90 | $582.00 | $638.10 | $822.20 |
| 3/25/2003 | $588.60 | $570.10 | $876.60 | $607.00 | $609.90 | $567.00 | $608.10 | $817.20 |
| 3/26/2003 | $588.60 | $605.70 | $936.80 | $642.50 | $609.90 | $602.60 | $653.70 | $902.40 |
| 3/27/2003 | $588.60 | $605.70 | $931.90 | $642.50 | $609.90 | $590.60 | $653.70 | $917.60 |
| 3/28/2003 | $588.60 | $605.70 | $907.00 | $642.50 | $609.90 | $563.60 | $653.70 | $892.70 |
| 3/31/2003 or after | $588.60 | $605.70 | $907.00 | $642.50 | $609.90 | $592.50 | $653.70 | $903.80 |

4.  $58.10 will be added to the baseline compensation of 3.25% Convertible Debentures (Due 4/1/03) bonds for any investor who held this bond on 9/30/1998.[5]

---

[5] There is no evidence to suggest that the prices of other bonds were affected by this disclosure.

**Appendix 2: Methodology Used for Calculating Baseline Compensation**

The first step for calculating the *baseline compensation* is to calculate the *daily return* for HealthSouth Stock (ticker: HLSH) and for eight HealthSouth bonds.  In addition, the *daily return* is calculated for two market indices:  the S&P 500 Index (ticker: GSPC) and the Vanguard Total Bond Market Index (ticker: VBMFX).[6] The *daily return* is based on closing prices.

Next, the *abnormal daily return* is calculated for each security. This represents the return that cannot be explained by the broader market return on a given day. The *abnormal daily return* on HealthSouth stock is calculated as the difference between the *daily return* on the stock and the *daily return* on the S&P 500 Index. The *abnormal daily return* on a HealthSouth bond is the difference between the *daily return* on the bond and the *daily return* on the Vanguard Total Bond Index.

The next step is to determine on what days the *abnormal return* was significantly different from zero at a 95% confidence level. For this purpose, the *standardized abnormal daily return* is calculated for each security by dividing the *abnormal daily return* by its *standard deviation.*[7] The *daily p-value* of the two-sided hypothesis test is then obtained by evaluating the cumulative *t*-distribution at the *standardized abnormal daily return* and multiplying by two. An *abnormal daily return* is significantly different from zero at a 95% confidence level if its *daily p-value* is less than 5%.

Next, the *adjustment period* is determined for each security. The *adjustment period* measures the number of days it took the security price to return to a period of "normal" returns after a Disclosure Date. The a*djustment period* begins on the Disclosure Date and ends with the first non-significant *abnormal daily return.* That is, the length of the *adjustment period* is the number of consecutive statistically significant *abnormal daily returns.*[8] The *adjustment period* for the HealthSouth stock was one trading day following the September 30, 1998 disclosure and five trading days after the August 27, 2002 disclosure. The *adjustment period* for HealthSouth bonds was one trading day for 3.25% Convertible Debentures (Due 4/1/03) following the September 30, 1998 disclosure, between two and three trading days, depending on the bond, following the August 27, 2002 disclosure; and between two and eight trading days following the March 18, 2003 disclosure.  The effect of the third disclosure on the stock price will be dealt with differently, as explained below.

Finally, the *abnormal daily return* is multiplied by the previous day's closing price for each security on each day of its *adjustment period*. This gives the *daily market adjusted price change*. The *baseline compensation* for each investor per unit of security is the sum of the *daily market adjusted price changes* for every day between the Disclosure Date and the sell date. If the investor did not sell the security during the *adjustment period*, the relevant *baseline compensation* is the sum of the *daily market adjusted price changes* over the entire *adjustment*

---

[6] The HealthSouth stock price and the market indices are from Yahoo! Finance. The bond prices are from SunGard and Bloomberg.

[7] The standard deviation for the stock is calculated for a control period of one year prior to the damages period (8/14/1995-8/13/1996). The standard deviation for the bonds for each disclosure is calculated for 100 days prior to the disclosure (6/23/1998 to 9/30/1998 for the first disclosure, 4/5/2002 to 8/26/2002 for the second disclosure, and 10/23/2002 to 3/17/2003 for the third disclosure).

[8] Only days on which the securities were traded are considered for evaluating the *adjustment period.*

*period*. An investor who held a security on multiple Disclosure Dates is entitled to the sum of the *baseline compensations* of these events.

This methodology is not used for the HealthSouth stock price following the March 18, 2003 disclosure. The reason being that the stock did not trade for several days following the disclosure and when trading resumed, its price fell to very low levels. This makes any statistical analysis of the stock returns less precise and less relevant.[9] Instead, the *baseline compensation* is calculated by simply subtracting $0.11 (the stock price on March 26, 2003, which was the first day after the stock resumed trading) from $3.91 (the closing stock price on March 18, 2003, which was the last day before the disclosure).

The tables below describe the data and the calculations used for determining the *adjustment period* and the *baseline compensation* for each security.

**HealthSouth Stock:**

| Date | Price | *Daily Return* | **S&P 500 Index** | **Index** *Daily Return* | *Abnormal Daily Return* | **Significance** of *Abnormal Daily Return* | *Daily Market Adjusted Price Changes* | *Baseline Compensation* |
|---|---|---|---|---|---|---|---|---|
| **September 30, 1998 Disclosure** | | | | | | | | |
| 9/29/1998 | 14.63 | | 1,049.02 | | | | - | - |
| 9/30/1998 | 10.50 | -28.23% | 1,017.01 | -3.05% | -25.18% | 100% | -$3.68 | $3.68 |
| 10/1/1998 | 9.81 | -6.57% | 986.39 | -3.01% | -3.56% | 86.87% | - | $3.68 |
| **August 27, 2002 Disclosure** | | | | | | | | |
| 8/26/2002 | 11.97 | | 947.95 | | | | - | - |
| 8/27/2002 | 6.71 | -43.94% | 934.82 | -1.39% | -42.56% | 100% | -$5.09 | $5.09 |
| 8/28/2002 | 5.05 | -24.74% | 917.87 | -1.81% | -22.93% | 100% | -$1.54 | $6.63 |
| 8/29/2002 | 5.67 | 12.28% | 917.80 | -0.01% | 12.28% | 100% | $0.62 | $6.01 |
| 8/30/2002 | 5.36 | -5.47% | 916.07 | -0.19% | -5.28% | 99.36% | -$0.30 | $6.31 |
| 9/03/2002 | 5.44 | 1.49% | 878.02 | -4.15% | 5.65% | 99.65% | $0.30 | $6.01 |
| 9/04/2002 | 5.53 | 1.65% | 893.40 | 1.75% | -0.10% | 3.29% | - | $6.01 |
| **March 19, 2003 Disclosure** | | | | | | | | |
| 3/18/2003 | 3.91 | | | | | | | - |
| 3/26/2003 | 0.11 | | | | | | | $3.80* |
| *\* Calculated as the difference between the 3/18/2003 price and the 3/26/2006 price.* | | | | | | | | |

---

[9] In fact, applying the same steps would lead to a *baseline compensation* that exceeds the price of the security before the disclosure.

**7% Senior Notes due 6/15/08:**

| Date | Price | *Daily Return* | **Total Bond Market Index** | **Index** *Daily Return* | *Abnormal Daily Return* | **Significance** of *Abnormal Daily Return* | *Daily Market Adjusted Price Changes* | *Baseline Compensation (per par value of $1,000)* |
|---|---|---|---|---|---|---|---|---|
| **August 27, 2002 Disclosure** | | | | | | | | |
| 8/26/2002 | 97.00 | | 8.41 | | | | - | - |
| 8/27/2002 | 85.00 | -12.37% | 8.39 | -0.24% | -12.13% | 100% | -$11.77 | $117.70 |
| 8/28/2002 | 81.00 | -4.71% | 8.41 | 0.24% | -4.94% | 100% | -$4.20 | $159.70 |
| 8/29/2002 | 79.00 | -2.47% | 8.42 | 0.12% | -2.59% | 97.61% | -$2.10 | $180.70 |
| 8/30/2002 | 79.00 | 0.00% | 8.47 | 0.59% | -0.59% | 39.58% | - | $180.70 |
| **March 19, 2003 Disclosure** | | | | | | | | |
| 3/18/2003 | 86.25 | | 8.77 | | | | - | - |
| 3/20/2003 | 48.00 | -44.35% | 8.74 | -0.34% | -44.01% | 100% | -$37.95 | $379.50 |
| 3/21/2003 | 45.00 | -6.25% | 8.71 | -0.34% | -5.91% | 100% | -$2.84 | $407.90 |
| 3/24/2003 | 46.00 | 2.22% | 8.75 | 0.46% | 1.76% | 91.82% | - | $407.90 |

**7.625% Senior Notes due 6/1/12:**

| Date | Price | *Daily Return* | **Total Bond Market Index** | **Index** *Daily Return* | *Abnormal Daily Return* | **Significance** of *Abnormal Daily Return* | *Daily Market Adjusted Price Changes* | *Baseline Compensation (per par value of $1,000)* |
|---|---|---|---|---|---|---|---|---|
| **August 27, 2002 Disclosure** | | | | | | | | |
| 8/26/2002 | 97.44 | | 8.41 | | | | - | - |
| 8/27/2002 | 84.94 | -12.83% | 8.39 | -0.24% | -12.59% | 100% | -$12.27 | $122.70 |
| 8/28/2002 | 81.00 | -4.64% | 8.41 | 0.24% | -4.88% | 99.37% | -$4.14 | $164.10 |
| 8/29/2002 | 78.24 | -3.41% | 8.42 | 0.12% | -3.53% | 95.16% | -$2.86 | $192.70 |
| 8/30/2002 | 80.10 | 2.38% | 8.47 | 0.59% | 1.78% | 68.18% | - | $192.70 |
| **March 19, 2003 Disclosure** | | | | | | | | |
| 3/18/2003 | 86.00 | | 8.77 | | | | - | - |
| 3/20/2003 | 48.00 | -44.19% | 8.74 | -0.34% | -43.84% | 100% | -$37.71 | $377.10 |
| 3/21/2003 | 44.50 | -7.29% | 8.71 | -0.34% | -6.95% | 100% | -$3.34 | $410.40 |
| 3/24/2003 | 46.25 | 3.93% | 8.75 | 0.46% | 3.47% | 99.86% | $1.55 | $395.00 |
| 3/25/2003 | 48.00 | 3.78% | 8.75 | 0.00% | 3.78% | 99.95% | $1.75 | $377.50 |
| 3/26/2003 | 44.50 | -7.29% | 8.76 | 0.11% | -7.41% | 100% | -$3.55 | $413.00 |
| 3/27/2003 | 45.25 | 1.69% | 8.77 | 0.11% | 1.57% | 85.13% | - | $413.00 |

**10.75% Senior Notes due 10/1/08:**

| Date | Price | *Daily Return* | **Total Bond Market Index** | **Index** *Daily Return* | *Abnormal Daily Return* | **Significance** of *Abnormal Daily Return* | *Daily Market Adjusted Price Changes* | *Baseline Compensation (per par value of $1,000)* |
|---|---|---|---|---|---|---|---|---|
| **August 27, 2002 Disclosure** | | | | | | | | |
| 8/26/2002 | 106.75 | | 8.41 | | | | - | - |
| 8/27/2002 | 97.00 | -9.13% | 8.39 | -0.24% | -8.90% | 100% | -$9.50 | $95.00 |
| 8/28/2002 | 89.50 | -7.73% | 8.41 | 0.24% | -7.97% | 100% | -$7.73 | $172.30 |
| 8/29/2002 | 88.50 | -1.12% | 8.42 | 0.12% | -1.24% | 76.67% | - | $172.30 |
| **March 19, 2003 Disclosure** | | | | | | | | |
| 3/18/2003 | 86.25 | | 8.77 | | | | - | - |
| 3/20/2003 | 24.00 | -72.17% | 8.74 | -0.34% | -71.83% | 100% | -$61.95 | $619.50 |
| 3/21/2003 | 13.00 | -45.83% | 8.71 | -0.34% | -45.49% | 100% | -$10.92 | $728.70 |
| 3/24/2003 | 14.50 | 11.54% | 8.75 | 0.46% | 11.08% | 100% | $1.44 | $714.30 |
| 3/25/2003 | 15.50 | 6.90% | 8.75 | 0.00% | 6.90% | 100% | $1.00 | $704.30 |
| 3/26/2003 | 9.50 | -38.71% | 8.76 | 0.11% | -38.82% | 100% | -$6.02 | $764.50 |
| 3/27/2003 | 10.00 | 5.26% | 8.77 | 0.11% | 5.15% | 100% | $0.49 | $759.60 |
| 3/28/2003 | 12.50 | 25.00% | 8.78 | 0.11% | 24.89% | 100% | $2.49 | $734.70 |
| 3/31/2003 | 12.50 | 0.00% | 8.85 | 0.80% | -0.80% | 48.62% | - | $734.70 |

**8.5% Senior Notes due 2/1/08:**

| Date | Price | *Daily Return* | **Total Bond Market Index** | **Index** *Daily Return* | *Abnormal Daily Return* | **Significance** of *Abnormal Daily Return* | *Daily Market Adjusted Price Changes* | *Baseline Compensation (per par value of $1,000)* |
|---|---|---|---|---|---|---|---|---|
| **August 27, 2002 Disclosure** | | | | | | | | |
| 8/26/2002 | 101.50 | | 8.41 | | | | - | - |
| 8/27/2002 | 88.00 | -13.30% | 8.39 | -0.24% | -13.06% | 100% | -$13.26 | $132.60 |
| 8/28/2002 | 84.00 | -4.55% | 8.41 | 0.24% | -4.78% | 100% | -$4.21 | $174.70 |
| 8/29/2002 | 84.00 | 0.00% | 8.42 | 0.12% | -0.12% | 8.23% | - | $174.70 |
| **March 19, 2003 Disclosure** | | | | | | | | |
| 3/18/2003 | 91.50 | | 8.77 | | | | - | - |
| 3/20/2003 | 48.00 | -47.54% | 8.74 | -0.34% | -47.20% | 100% | -$43.19 | $431.90 |
| 3/21/2003 | 45.00 | -6.25% | 8.71 | -0.34% | -5.91% | 100% | -$2.84 | $460.20 |
| 3/24/2003 | 46.00 | 2.22% | 8.75 | 0.46% | 1.76% | 95.22% | $0.79 | $452.30 |
| 3/25/2003 | 48.00 | 4.35% | 8.75 | 0.00% | 4.35% | 100% | $2.00 | $432.30 |
| 3/26/2003 | 44.50 | -7.29% | 8.76 | 0.11% | -7.41% | 100% | -$3.55 | $467.80 |
| 3/27/2003 | 45.25 | 1.69% | 8.77 | 0.11% | 1.57% | 92.22% | - | $467.80 |

**7.375% Senior Notes due 10/1/06:**

| Date | Price | *Daily Return* | Total Bond Market Index | Index *Daily Return* | *Abnormal Daily Return* | Significance of *Abnormal Daily Return* | *Daily Market Adjusted Price Changes* | *Baseline Compensation (per par value of $1,000)* |
|---|---|---|---|---|---|---|---|---|
| **August 27, 2002 Disclosure** | | | | | | | | |
| 8/26/2002 | 98.50 | | 8.41 | | | | - | - |
| 8/27/2002 | 87.00 | -11.68% | 8.39 | -0.24% | -11.44% | 100% | -$11.27 | $112.70 |
| 8/28/2002 | 82.00 | -5.75% | 8.41 | 0.24% | -5.99% | 100% | -$5.21 | $164.70 |
| 8/29/2002 | 82.00 | 0.00% | 8.42 | 0.12% | -0.12% | 10.79% | - | $164.70 |
| **March 19, 2003 Disclosure** | | | | | | | | |
| 3/18/2003 | 90.50 | | 8.77 | | | | - | - |
| 3/20/2003 | 50.00 | -44.75% | 8.74 | -0.34% | -44.41% | 100% | -$40.19 | $401.90 |
| 3/21/2003 | 45.50 | -9.00% | 8.71 | -0.34% | -8.66% | 100% | -$4.33 | $445.20 |
| 3/24/2003 | 46.00 | 1.10% | 8.75 | 0.46% | 0.64% | 50.02% | - | $445.20 |

**8.375% Senior Notes due 10/1/11:**

| Date | Price | *Daily Return* | Total Bond Market Index | Index *Daily Return* | *Abnormal Daily Return* | Significance of *Abnormal Daily Return* | *Daily Market Adjusted Price Changes* | *Baseline Compensation (per par value of $1,000)* |
|---|---|---|---|---|---|---|---|---|
| **August 27, 2002 Disclosure** | | | | | | | | |
| 8/26/2002 | 101.00 | | 8.41 | | | | - | - |
| 8/27/2002 | 87.00 | -13.86% | 8.39 | -0.24% | -13.62% | 100% | -$13.76 | $137.60 |
| 8/28/2002 | 84.50 | -2.87% | 8.41 | 0.24% | -3.11% | 98.16% | -$2.71 | $164.70 |
| 8/29/2002 | 84.00 | -0.59% | 8.42 | 0.12% | -0.71% | 40.96% | - | $164.70 |
| **March 19, 2003 Disclosure** | | | | | | | | |
| 3/18/2003 | 88.50 | | 8.77 | | | | - | - |
| 3/20/2003 | 49.00 | -44.63% | 8.74 | -0.34% | -44.29% | 100% | -$39.20 | $392.00 |
| 3/21/2003 | 44.50 | -9.18% | 8.71 | -0.34% | -8.84% | 100% | -$4.33 | $435.30 |
| 3/24/2003 | 46.50 | 4.49% | 8.75 | 0.46% | 4.04% | 100% | $1.80 | $417.30 |
| 3/25/2003 | 48.00 | 3.23% | 8.75 | 0.00% | 3.23% | 99.89% | $1.50 | $402.30 |
| 3/26/2003 | 44.50 | -7.29% | 8.76 | 0.11% | -7.41% | 100% | -$3.55 | $437.90 |
| 3/27/2003 | 45.75 | 2.81% | 8.77 | 0.11% | 2.69% | 99.37% | $1.20 | $425.90 |
| 3/28/2003 | 48.50 | 6.01% | 8.78 | 0.11% | 5.90% | 100% | $2.70 | $398.90 |
| 3/31/2003 | 46.00 | -5.15% | 8.85 | 0.80% | -5.95% | 100% | -$2.89 | $427.80 |
| 4/1/2003 | 45.50 | -1.09% | 8.85 | 0.00% | -1.09% | 72.90% | - | $427.80 |

**6.875% Notes due 6/15/05:**

| Date | Price | Daily Return | Total Bond Market Index | Index Daily Return | Abnormal Daily Return | Significance of Abnormal Daily Return | Daily Market Adjusted Price Changes | Baseline Compensation (per par value of $1,000) |
|---|---|---|---|---|---|---|---|---|
| **August 27, 2002 Disclosure** | | | | | | | | |
| 8/26/2002 | 98.67 | | 8.41 | | | | - | - |
| 8/27/2002 | 86.98 | -11.85% | 8.39 | -0.24% | -11.61% | 100% | -$11.46 | $114.60 |
| 8/28/2002 | 83.50 | -4.00% | 8.41 | 0.24% | -4.24% | 100% | -$3.69 | $151.40 |
| 8/29/2002 | 80.64 | -3.43% | 8.42 | 0.12% | -3.54% | 100% | -$2.96 | $181.00 |
| 8/30/2003 | 81.00 | 0.45% | 8.47 | 0.59% | -0.15% | 16.11% | - | $181.00 |
| **March 19, 2003 Disclosure** | | | | | | | | |
| 3/18/2003 | 94.00 | | 8.77 | | | | - | - |
| 3/20/2003 | 52.00 | -44.68% | 8.74 | -0.34% | -44.34% | 100% | -$41.68 | $416.80 |
| 3/21/2003 | 46.00 | -11.54% | 8.71 | -0.34% | -11.20% | 100% | -$5.82 | $475.00 |
| 3/24/2003 | 48.00 | 4.35% | 8.75 | 0.46% | 3.89% | 100% | $1.79 | $457.10 |
| 3/25/2003 | 51.00 | 6.25% | 8.75 | 0.00% | 6.25% | 100% | $3.00 | $427.10 |
| 3/26/2003 | 46.50 | -8.82% | 8.76 | 0.11% | -8.94% | 100% | -$4.56 | $472.70 |
| 3/27/2003 | 46.50 | 0.00% | 8.77 | 0.11% | -0.11% | 11.81% | - | $472.70 |

**3.25% Convertible Debentures due 4/01/03:**

| Date | Price | Daily Return | Total Bond Market Index | Index Daily Return | Abnormal Daily Return | Significance of Abnormal Daily Return | Daily Market Adjusted Price Changes | Baseline Compensation (per par value of $1,000) |
|---|---|---|---|---|---|---|---|---|
| **September 30, 1998 Disclosure** | | | | | | | | |
| 9/29/1998 | 82.56 | | 6.63 | | | | - | - |
| 9/30/1998 | 77.50 | -6.13% | 6.69 | 0.90% | -7.04% | 100% | -$5.81 | $58.10 |
| 10/1/1998 | 77.60 | 0.13% | 6.72 | 0.45% | -0.31% | 15.62% | | |
| **August 27, 2002 Disclosure** | | | | | | | | |
| 8/26/2002 | 97.37 | | 8.41 | | | | - | - |
| 8/27/2002 | 95.62 | -1.80% | 8.39 | -0.24% | -1.56% | 99.37% | -$1.52 | $15.20 |
| 8/28/2002 | 94.00 | -1.69% | 8.41 | 0.24% | -1.93% | 99.93% | -$1.85 | $33.70 |
| 8/29/2002 | 93.50 | -0.53% | 8.42 | 0.12% | -0.65% | 74.55% | - | $33.70 |
| **March 19, 2003 Disclosure** | | | | | | | | |
| 3/18/2003 | 99.75 | | 8.77 | | | | - | - |
| 3/20/2003 | 38.75 | -61.15% | 8.74 | -0.34% | -60.81% | 100% | -$60.66 | $606.60 |
| 3/21/2003 | 17.00 | -56.13% | 8.71 | -0.34% | -55.79% | 100% | -$21.62 | $822.80 |
| 3/24/2003 | 20.50 | 20.59% | 8.75 | 0.46% | 20.13% | 100% | $3.42 | $788.50 |
| 3/25/2003 | 21.00 | 2.44% | 8.75 | 0.00% | 2.44% | 100% | $0.50 | $783.50 |
| 3/26/2003 | 12.50 | -40.48% | 8.76 | 0.11% | -40.59% | 100% | -$8.52 | $868.80 |
| 3/27/2003 | 11.00 | -12.00% | 8.77 | 0.11% | -12.11% | 100% | -$1.51 | $883.90 |
| 3/28/2003 | 13.50 | 22.73% | 8.78 | 0.11% | 22.61% | 100% | $2.49 | $859.00 |
| 3/31/2003 | 12.50 | -7.41% | 8.85 | 0.80% | -8.20% | 100% | -$1.11 | $870.10 |
| 4/1/2003 | 12.50 | 0.00% | 8.85 | 0.00% | 0.00% | 0.00% | - | $870.10 |